No. 87-335

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

MARK DeMERS,

Defendant and Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Larry D Mansch, Public Defender's Office, Missoula, MT

For Respondent:

Honorable Mike Greely, Attorney General, Helena, MT
Robert L. Deschamps, III, Missoula County Attorney
Ed McLean, Deputy County Attorney, Missoula, MT

Submitted on Briefs: Sept. 1, 1988

Decided: October 13, 1988

FILED

Filed:

'88 OCT 13 AM 10 25

CLERK
MONTANA SUPREME COURT

Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Mr. DeMers was convicted by jury of deliberate homicide in the District Court for the Fourth Judicial District, Missoula County. He was sentenced to a term of fifty years, plus ten years for use of a dangerous weapon, to be served consecutively. Mr. DeMers appeals. We affirm.

The issues are:

1. Did the District Court err in refusing to allow juror testimony at the hearing for a new trial?

2. Did the District Court err in denying defendant's motion for a new trial based on the prosecutor's failure to disclose exculpatory information?

3. Did the District Court err in instructing the jury on justifiable use of force?

4. Did the District Court err in denying defendant's motion for mistrial?

On the evening of July 26, 1986, Mark DeMers parked his semi-truck in the parking lot of the OK Corral, which is a bar in Missoula, Montana. After several hours of drinking, Mr. DeMers left the bar. He found a small car parked directly in front of his truck, making it impossible for him to leave. Mr. DeMers returned to the bar and requested an announcement be made over the loudspeaker system to have the car moved. The testimony of the defendant established that several of these announcements were made before the owner of the car, Ruby Peterson, emerged from the bar with her boyfriend at around closing hour.

As Ms. Peterson and her boyfriend John Polinsky approached the vehicle, they were confronted by Mr. DeMers. Words were exchanged between the two men, although the testimony conflicts as to what was said. Following the exchange,

Mr. DeMers shot Mr. Polinsky with a .44 magnum pistol, then got into his truck and drove away.

The jury found the defendant guilty of deliberate homicide. The defense moved for a new trial and requested that jurors be allowed to testify at that hearing. It also moved for a new trial based on newly discovered evidence. The defendant appeals the denial of these motions, the denial of a motion for a mistrial, and the propriety of jury instructions given by the District Court.

I

Did the District Court err in refusing to allow juror testimony at the hearing for a new trial?

In his motion for a new trial, the defendant requested that jurors be allowed to testify based on five juror affidavits received by defense counsel. Four of the affidavits stated that those jurors were confused with the statutory definition of "knowingly." One of the affidavits stated that the juror became fatigued during deliberations and felt pressured to find Mr. DeMers guilty of deliberate homicide in order to expedite jury deliberations. In his brief, defense counsel stated that juror testimony was also requested to show that one juror influenced the rest with his expertise, that some of the jurors conducted an improper experiment, and that some jurors wanted to request that the trial judge reread certain testimony, but were precluded from making this request. No affidavits were filed which establish facts relating to those three issues.

The statutory law governing the admissibility of juror testimony to impeach the verdict is found in Rule 606(b), M.R.Evid.:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of

3

the jury's deliberations or to the effect of any-
thing upon his or any other juror's mind or emo-
tions as influencing him to assent or dissent from
the verdict or indictment or concerning his mental
processes in connection therewith. Nor may his
affidavit or evidence of any statement by him
concerning a matter about which he would be pre-
cluded from testifying be received for these
purposes.
However, as an exception to this subdivision,
a juror may testify and an affidavit or evidence of
any kind be received as to any matter or statement
concerning only the following questions, whether
occurring during the course of the jury's delibera-
tions or not: (1) whether extraneous prejudicial
information was improperly brought to the jury's
attention; or (2) whether any outside influence was
brought to bear upon any juror; or (3) whether any
juror has been induced to assent to any general or
special verdict, or finding on any question submit-
ted to them by the court, by a resort to the deter-
mination of chance.

We will address each subject requested by the defense for
juror testimony in relation to this statute.

Juror confusion over the statutory definition of delib-
erate homicide does not qualify as an exception to Rule
606(b). State v. Sigler (1984), 210 Mont. 248, 257, 688 P.2d
749, 753. The substance of this testimony is precisely what
Rule 606(b) seeks to prohibit.

Likewise, even if some jurors became fatigued, that is
not an outside influence or extraneous prejudicial informa-
tion. A juror's physical, mental, and emotional condition is
inherent in the verdict, and the effect of such a condition
on a juror's vote is within the prohibition of Rule 606(b).
State v. Maxwell (1982), 198 Mont. 498, 507, 647 P.2d 348,
353. A juror's request for repeated testimony is also part
of the mental processes inherent in the verdict and is disal-
lowed as a statement made during jury deliberations.

4

The defendant asserts in his brief that one of the jurors, when interviewed, informed counsel that he possessed expertise regarding the study of bones. This expertise, along with an experiment performed by some of the jurors, was allegedly used to speculate on the possible angles of bullet deflection by the ribs and to rebut the testimony of defendant's expert at trial. Jurors are expected to bring to the courtroom their own knowledge and experience to aid in the resolution of a case. A juror's possession of knowledge about the human body is neither extraneous information, outside influence, nor agreement to verdict by chance. For the juror to have considered the credibility of defendant's expert witness within the parameters of his own experience and background is insufficient to qualify as an exception to Rule 606(b).

The defendant contends that an experiment performed by the jury in conjunction with the expert juror's comments was improper and constitutes jury misconduct. Assuming that the experiment took place, we find nothing objectionable in its performance given the factual discrepancies of this case. There was considerable dispute at trial as to the position of and the distance between the two men when Mr. DeMers shot Mr. Polinsky. Based on his examination of the wound and chemical residues on the shirts of the victim and the defendant, the defendant's expert witness testified that the physical evidence was not consistent with Mr. DeMers walking up to the victim as he opened the car door and pulling the trigger. We conclude there is no prejudice to the defendant when one juror donned Mr. DeMers' shirt to see how the garment might fit depending on the position of Mr. DeMers' body. We find no extraneous prejudicial information or outside influence in performing this kind of experiment.

5

Since we find no juror misconduct on any of the above issues, we need not discuss the final issue of prejudice to the defendant. The District Court was correct in concluding that juror testimony was not allowed during the hearing for a new trial under Rule 606(b).

II

Did the District Court err in denying defendant's motion for a new trial based on the prosecutor's failure to disclose exculpatory information?

The defendant moved for a new trial based on the following grounds:

1. The failure of the prosecutor to disclose the fact that the victim was an experienced combat veteran;

2. The failure of the prosecutor to disclose that the victim's fingerprints were on file with federal agencies.

The District Court found that this evidence constituted newly discovered evidence, and applied the test set forth in State v. Greeno (1959), 135 Mont. 580, 342 P.2d 1052, to determine whether a new trial was warranted. In Greeno, this Court set out certain requirements which must be met to merit a new trial:

1. The evidence must have come to the knowledge of the applicant since the trial;

2. That it is not through want of diligence that it was not discovered earlier;

3. That it is so material that it would probably produce a different result upon another trial.

Greeno, 342 P.2d at 1055.

The District Court found that the last two requirements of that test were not met and therefore a new trial was not

warranted. Since the granting or denial of a new trial rests within the sound discretion of the district court, we will not overturn that determination unless an abuse of discretion is shown.

The record discloses that the fact of John Polinsky's military service was readily available to defense counsel. An obituary which appeared in the local newspaper shortly after the incident not only mentioned the fact of Polinsky's military background, but also listed survivors from whom the information could have been sought. At the hearing for a new trial, Mr. Polinsky's girlfriend stated that defense counsel had never asked her about whether she had knowledge of Mr. Polinsky's military service. We note that Mr. DeMers' military training was brought out in both pretrial proceedings and during trial. Given the similar age of Mr. Polinsky at the time of his death, we agree with the District Court that it was neither unusual nor surprising that he served in the military during the Vietnam conflict.

In light of these factors, we find that Mr. Polinsky's service in the U.S. Army and the availability of his fingerprints therefrom could have been discovered earlier in the proceedings, prior to the State's case-in-chief. We hold that the District Court correctly concluded that defense counsel did not exercise proper diligence in obtaining this information now claimed to warrant a new trial.

To satisfy the third part of the test as set forth in Greeno, the defendant must show that the newly discovered evidence is so material that it would probably produce a different result upon another trial. The defendant contends that evidence of Mr. Polinsky's military experience is crucial to show his familiarity with violence. The defendant also wishes to connect a beer bottle found in the parking lot near the crime scene with John Polinsky by use of his

7

fingerprints. Mr. DeMers contends that this evidence is material as it supports his theory of self defense and his claim that Mr. Polinsky was the aggressor.

Defense counsel requested a fingerprint test be performed after it was discovered that Mr. Polinsky's prints were on file with a federal agency. Those results were negative. Because no connection between the beer bottle and the victim was confirmed, we conclude that this evidence would probably not have resulted in a different outcome at another trial.

We also agree with the District Court that the defendant has failed to demonstrate that evidence of Mr. Polinsky's military experience would produce a different result upon another trial. The most the evidence would have done was to rebut the testimony of Mr. Polinsky's girlfriend that he was quiet and nonaggressive. The defendant makes no connection between his theory that the gun somehow discharged accidentally, and Mr. Polinsky's familiarity with violence. Since the defendant has not met the requirements set forth in Greeno, we affirm the findings and conclusions of the District Court and find no abuse of discretion in denying the defendant's motion for a new trial.

III

Did the District Court err in instructing the jury on justifiable use of force?

The district court has a duty to instruct the jury on every issue or theory having support in the evidence. In determining whether to give an instruction, the inquiry of the court must only be whether any evidence exists in the record to warrant an instruction. State v. Sotelo (1984), 209 Mont. 86, 89, 679 P.2d 779, 781.

Neither party requested an instruction on justifiable use of force or self defense, but the District Court decided

8

to give one. The defendant claims that the instruction on self defense lacked evidentiary support and only served to confuse the jury. He contends that juror confusion resulted from the conflicting theories of negligent homicide and self defense. At no time did Mr. DeMers claim to have shot Mr. Polinsky intentionally. Lack of intent supports his negligent homicide theory but conflicts with a theory of self defense. Mr. DeMers therefore claims that the instruction was improper and misleading. We do not agree. Based on our analysis of the record we find ample evidence to support the giving of the instruction, even if it conflicted with defendant's theory of the case.

In order to find justifiable use of force the jury must find that the defendant (1) was not the aggressor, (2) reasonably believed that he was in imminent danger of unlawful harm, and (3) that he used reasonable force necessary to defend himself. The testimony of Mr. DeMers establishes these elements sufficiently to warrant the giving of a self defense instruction.

Mr. DeMers testified that he first noticed the victim when Mr. Polinsky yelled at him from across the parking lot. The defendant testified that he got in his truck, observed the crowd of people and concluded that it was "not too good of a situation." When he got out of the truck, he grabbed his pistol and held it behind his leg. He testified that "I didn't want nobody to see it. I was just trying to be cautious. I was a little bit afraid at this point. And I didn't know what was going to happen."

According to the defendant, it appeared that Mr. Polinsky was holding something in both of his hands as he walked up to Mr. DeMers and told him "I'm going to kick your ass good." We find that the defendant's testimony describing Mr. Polinsky's statements and his actions could reasonably

lead a jury to conclude that Mr. DeMers was not the aggressor.

The defendant then quoted several more threatening statements made by the victim, at which time Mr. DeMers testified he raised his gun and pulled back the hammer out of fear. Mr. DeMers testified that both men, believing that the confrontation was over, turned away from each other. At that point he described what he thought he heard the victim say: "And I couldn't make out what he said, except for the last - - I don't hear very good - - except for the last two words; and the last two words was 'kill you.'" These final words, coupled with Mr. Polinsky's previous threats and his brazen attitude in the face of a cocked pistol, could suggest to a jury that Mr. DeMers reasonably believed he was in danger of unlawful harm.

We conclude that the defendant's testimony quoted above is sufficient for the jury to have found that Mr. DeMers could have been acting in self defense when he shot Mr. Polinsky. We hold that the District Court did not err in giving an instruction on justifiable use of force.

IV

Did the District Court err in denying the defendant's motion for a mistrial?

Prior to trial, the defendant filed a motion in limine requesting in part that the State be precluded from offering evidence of any character trait of the defendant other than credibility. The motion was granted with the understanding that the State might use such evidence for cross-examination or rebuttal, after obtaining the court's permission outside the presence of the jury.

During cross-examination of Mr. DeMers, the State inquired into his history of alcohol treatment and asked about his temperament when he drank. Defense counsel moved for a

mistrial claiming that the State had violated the motion in limine. The District Court denied the motion finding that defense counsel had already opened the door to such character evidence and that Mr. DeMers' temperament had become an issue in the case. The court further held that evidence of the defendant's military records of alcoholism and violence nine years prior to this incident was too remote. At the request of defense counsel, the court instructed the jury to disregard all questions and answers on this subject prior to the objection.

From our examination of the record, we conclude that defense counsel first raised the issue of Mr. DeMers' character, his use of alcohol, and his state of mind on the night in question. It was not a violation of the motion in limine for the State to respond to that evidence on cross-examination.

Furthermore, the District Court is in the better position to judge the prejudicial effect of otherwise relevant evidence on the jury. The District Court found the evidence to be nonprejudicial in two respects. First, it was character evidence of a general nature, and second, defense counsel did not object to the questions until after they had been asked and answered. The District Court's findings, in addition to the giving of a cautionary instruction, support its conclusion that no prejudicial effect was created by the State's inquiry. We find no abuse of discretion in the denial of defendant's motion for a mistrial.

Affirmed.

_____
Justice

We Concur:

_____
John C. Sheehy

11

R. C. Gulbrandson

William E. Hunt Sr.

R. C. McDonough
Justices

12