No. 88-546

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

---

STATE OF MONTANA,

        Plaintiff and Respondent,

   -vs-

GEORGE R. POPESCU,

        Defendant and Appellant.

---

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Chouteau,
The Honorable Chan Ettien, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Moses Law Firm; Charles F. Moses, Billings, Montana

    For Respondent:

        Hon. Marc Racicot, Attorney General, Helena, Montana
        George Schunk, Asst. Atty. General, Helena
        Thomas J. Sheehy, County Attorney, Fort Benton,
        Montana

---

Submitted on Briefs: May 11, 1989

Decided: June 6, 1989

Filed:

_____
             Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Defendant Popescu was convicted of two counts of felony assault, one count of intimidation, and one count of criminal endangerment in a jury trial in the District Court for the Twelfth Judicial District, Chouteau County. He appeals. We reverse.

The dispositive issue is whether the District Court erred in refusing to give any of the justifiable use of force instructions offered by defendant and by the State.

The defendant, who was 37 years old at the time of trial, lives alone on a farm near Fort Benton, Montana. In 1986 and again in 1987, defendant hired a crew of custom combiners led by Jim Barker of Yazoo City, Mississippi, to cut his grain. In July and August 1987, Barker and his crew cut about 600 acres of grain on defendant's farm, leaving about 400 acres uncut. They then went to another job. Their view was that the remaining 400 acres of grain were not yet ready to be cut. Defendant's view was that they left him in the lurch. He hired another combiner to cut the remaining grain.

The following Saturday, Barker and a member of his crew, Hastings, went to defendant's farm to collect their pay for the work they had done. Defendant and the combiners had a heated argument during which Hastings swore at defendant and defendant drew a handgun. Barker and Hastings then left.

The next morning, Barker and two of his crewmembers again drove out to defendant's farm. More heated words were exchanged. Defendant fired his gun either into the air (his version) or at the three men (their version). Barker and defendant then came to the agreement that if Barker would obtain a written apology from Hastings and return to defendant some wooden blocks and a crescent wrench, defendant would pay for the work done. Later that afternoon, Barker

and a crewmember returned to defendant's farm with the requested items and defendant wrote them a check.

That evening defendant went to the Circle K store in Fort Benton to get a take-out sandwich. While he was still there, Barker and two others drove up and parked next to defendant's truck. Then another pickup drove up and parked behind defendant's truck. The occupants of that truck testified that this was the only available spot for them to park. Defendant met Barker as defendant was walking out of the store. Defendant also saw the other custom combiners outside. He displayed his gun when Barker said, "We will settle this right here and now." Defendant returned to his pickup, yelled at those in the truck behind his to move, then rammed that truck out of the way so that he could leave. One of that truck's passengers was just getting out when defendant rammed it and injured his knee. Defendant went home.

Defendant was charged with felony assault for the Saturday evening incident, intimidation and felony assault for the Sunday morning incident, felony assault for use of the gun in the Circle K incident, and criminal endangerment for ramming the pickup in the Circle K incident. After hearing the evidence, the court dismissed the count arising out of the Saturday evening incident. Defendant was convicted of the remaining charges.

At trial, defendant offered several instructions concerning the defense of justifiable use of force. The court refused them all, stating, "There is no evidence at all from which a threat can be aimed at the defendant and authorizing him to act the way he did." The State did not object to the defendant's proposed instructions on this subject and offered its own proposed instructions on self-defense. The court refused them, too.

It is the duty of the District Court to instruct the jury on every issue or theory which has support in the

3

evidence. State v. Starr (1983), 204 Mont. 210, 217, 664 P.2d 893, 897. The elements of proof necessary to establish justifiable use of force were described by this Court in State v. DeMers (Mont. 1988), 762 P.2d 860, 45 St.Rep. 1901. They are (1) that the defendant was not the aggressor, (2) that the defendant reasonably believed that he was in imminent danger of unlawful harm, and (3) that the defendant used reasonable force necessary to defend himself. DeMers, 762 P.2d at 865. In DeMers, the Court reviewed the defendant's testimony to determine whether there was sufficient evidence to submit to the jury the issue of justifiable use of force.

In the present case, defendant testified that during his Saturday evening argument with the combiners, when Hastings swore and began running toward defendant, "I thought he fully intended to attack me." He stated that he had been told that Hastings was "real crazy . . . wild, irresponsible." He testified that he then grabbed his handgun and turned to face Hastings, saying "keep away from me."

As to the Sunday morning incident, defendant testified that when Barker and the two other crewmembers came to the Popescu farm, they pulled up rapidly right in front of his truck. "It was very hostile and aggressive when he pulled in." He testified that he feared a 3-against-1 fight and fired a gun into the air.

Defendant testified that when he looked out the window of the Circle K on Sunday evening, he

> saw Barker pull in across the parking lot right diagonally at my pickup, the driver's door, and pull up right next to it just as close as he thought he could get at the time. And right behind that came another pickup, a red and white pickup. Parked behind my pickup. I was blockaded in at that point.

4

He stated that when he walked out of the store and met Barker, he had his gun in his hand, pointing at the ground. After Barker said, "We will settle this, right here and now," Barker noticed the gun and asked, "Are you going to fire that here in front of everybody?" Defendant testified that he replied, "I will do what is necessary." Defendant testified that when he got into his pickup he "thought I better get out of here. I am going to have to get out of here." He stated that he called out to the occupants of the pickup behind his to move their vehicle, but that they ignored him. He then "lightly tapped" the pickup behind him with his truck, but the occupants continued to ignore him so he "backed out and moved the pickup out of my way."

We conclude that under the circumstances presented in this case, the defendant's testimony was sufficient to warrant submitting to the jury the issue of whether defendant exercised justifiable use of force. Defendant's counsel properly entered his objection to the District Court's refusal to give such instructions. We hold that it was error to fail to instruct on this issue. Because of this error, we reverse.

The defendant raised several other issues in his appeal. The first of these is whether the District Court erred in refusing to permit a licensed clinical psychologist to testify in defendant's behalf. The defense offered this testimony under § 46-14-102, MCA, which relates to evidence that defendant suffered from a mental disease or defect. However, the defense did not give pretrial notice of relying on mental disease or defect, as required by § 46-14-201, MCA. We conclude that under these circumstances the court did not err in refusing to allow the testimony.

Defendant also raised three issues relating to whether certain witnesses should have been allowed to testify or not. These issues concern failure of the State to provide previous notice of witnesses who testified on rebuttal, failure of the

5

court to grant a continuance to allow the defense to pursue possible exculpatory testimony, and failure of the court to issue certificates for subpoenas for out-of-state witnesses desired by the defense. These issues may or may not re-arise on retrial. We will not consider them now.

Finally, defendant argues that the evidence was insufficient to convict him of intimidation for the Sunday morning incident. Since the evidence may not be identical on retrial, we decline to address the issue at this time.

Reversed and remanded for retrial.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices