No. 98-298

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 103

294 Mont. 302

980 P.2d 1053

STATE OF MONTANA,

Plaintiff and Respondent,

v.

CORY SITTNER,

Defendant and Appellant.

No

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

Honorable Diane G. Barz, Judge Presiding.

COUNSEL OF RECORD:

For Appellant:

Gary E. Wilcox, Attorney at Law, Billings, Montana

For Respondent:

Honorable Joseph P. Mazurek, Attorney General; Cregg W. Coughlin,

Assistant Attorney General, Helena, Montana

Dennis Paxinos, County Attorney; Joe Coble, Deputy County

Attorney, Billings, Montana

Submitted on Briefs: April 15, 1999

No

Decided: May 18, 1999

Filed:

_____

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

**¶1. Cory Sittner appeals his conviction before the Thirteenth Judicial District Court, Yellowstone County, of accountability for felony assault. We affirm.**

<u>ISSUES</u>

**¶2. 1. Did the District Court err in instructing the jury on the elements of criminal accountability?**

**¶3. 2. Was there sufficient evidence presented at trial to support the jury's verdict that Sittner was guilty of felony assault by accountability?**

<u>BACKGROUND</u>

**¶4. The events which led to Sittner's conviction occurred on May 17, 1997. At approximately 10:00 p.m., Yellowstone County sheriff's deputies responded to a report of a "kegger" involving a large number of teen-aged juveniles taking place in the Lockwood area outside Billings, Montana, at the home of Bryce Payton. Upon**

arriving on the scene, the deputies found a severely injured, unconscious male, later identified as Nathan Ashcraft, lying in the roadway leading to the house. The victim's injuries appeared to have been caused by a blunt trauma to the head. The deputies called for medical assistance, and the victim was flown by helicopter to St. Vincent Hospital where he was listed in critical condition as a result of severe swelling of his brain tissue.

¶5. The sheriff's department initiated an investigation into the assault on Ashcraft and discovered that Ashcraft had attended the party on the evening of May 17, 1997, with several of his friends, including an individual by the name of Mike Kennedy. Sittner, his friends, Joe Wallace, Marcus Stamp, Justin Sherman and Andy Davis were also at the party that evening, along with an estimated 100 to 300 other people.

¶6. Approximately six weeks prior to the date of the party, Kennedy and Sittner had been involved in an altercation in which Kennedy and another person had assaulted Sittner in his home. Kennedy characterized his relationship with Sittner as "bitter" and testified that once he realized that Sittner and his friends were at the May 17 party, he anticipated a confrontation between himself and either Sittner or Sittner's friend, Wallace. Later however, Kennedy noticed that Wallace had apparently seen and recognized him without doing anything to start a fight, and Kennedy assumed there would be no trouble that evening.

¶7. Shortly thereafter, while standing near the beer keg in front of the garage, Kennedy was pushed hard from behind. He turned and discovered Wallace challenging him to a fight. When Wallace moved to hand his beer to a friend, Kennedy punched him in the face, knocking him down. While Wallace was being helped to his feet, Kennedy fled through the crowd and down the drive which led to the main road in front of the house. Sittner and some of Wallace's other friends who had been next to Wallace during the confrontation with Kennedy began to shout and pursue Kennedy on foot.

¶8. Realizing that a fight was imminent, a number of people began moving down the road in the direction Kennedy had run. At some point, Sittner, Wallace and some others got into a car driven by Davis and drove approximately one-quarter mile from the house where a small group had congregated around a person they believed to be Kennedy, but who was in fact, Ashcraft. Ashcraft was attempting to clarify to members of this crowd that he was not Kennedy and was not involved in this affair

when Wallace broke into the crowd, punched Ashcraft in the face, and knocked him to the ground. While Ashcraft was lying on the ground unconscious, several people began kicking him repeatedly in the head for several minutes. Members of the sheriff's department arrived shortly thereafter and the crowd quickly disbanded.

¶9. Based on the reports of witnesses, Sittner, Wallace, Stamp, Sherman, and Davis were eventually charged in connection with the beating. Both Wallace and Stamp pled guilty to aggravated assault on Ashcraft and later testified at Sittner's trial. Sittner was charged by Information with accountability for the crime of aggravated assault as committed by himself or Wallace or Stamp or Sherman when they purposely or knowingly caused bodily injury to Ashcraft in violation of §§ 45-5-202 and 45-2-301, MCA. The jury found Sittner guilty as charged and the District Court sentenced him to fifteen years in the Montana State Prison. From this conviction, Sittner appeals.

## DISCUSSION

¶10. 1. Did the District Court err in instructing the jury on the elements of criminal accountability?

¶11. We review an alleged error in a district court's instructions to a jury to determine whether, as a whole, they fully and fairly instruct the jury on the law applicable to the case. *State v. Houle*, 1998 MT 235, ¶ 12, 966 P.2d 147, ¶ 12, 55 St. Rep. 989, ¶12. Section 45-2-302(3), MCA, states, in relevant part, that legal accountability for the conduct of another exists when "either before or during the commission of an offense with the purpose to promote or facilitate such commission, [the accused] solicits, aids, abets, agrees, or attempts to aid such other person in the planning or commission of the offense."

¶12. Sittner argues that the District Court erred when it failed to instruct the jury that a defendant's knowledge that a crime is being committed, in conjunction with the defendant's presence during the commission of the crime, is insufficient to support a finding of guilt by accountability. The State responds that this instruction, offered by the defendant as a proposed jury instruction, was withdrawn when the State agreed to amend its proposed jury instruction on the definition of accomplice to read: "One may become an accomplice by being present and joining in the criminal act." It is the State's contention that Sittner waived his objection to the failure of the District Court to give his proposed instruction when he withdrew it during the

settling of instructions.

¶13. We agree with the State. Failure to lodge a timely objection constitutes a waiver of the objection and precludes raising the issue on appeal. Section 46-20-104(2), MCA. Exceptions to the usual requirement that a timely objection be lodged are found in § 46-20-701(2), MCA, which reads:

Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded. A claim alleging an error affecting jurisdictional or constitutional rights may not be noticed on appeal if the alleged error was not objected to as provided in 46-20-104, unless the convicted person establishes that the error was prejudicial as to the convicted person's guilt or punishment and that:

(a) the right asserted in the claim did not exist at the time of the trial and has been determined to be retroactive in its application;

(b) the prosecutor, the judge, or a law enforcement agency suppressed evidence from the convicted person or the convicted person's attorney that prevented the claim from being raised and disposed of; or

(c) material and controlling facts upon which the claim is predicated were not known to the convicted person or the convicted person's attorney and could not have been ascertained by the exercise of reasonable diligence.

¶14. None of the grounds set forth in § 46-20-701(2), MCA, apply in this case to excuse Sittner's failure to sustain his objection to the proposed jury instructions at the time of trial. Additionally, neither party has advanced an argument compelling us to consider the admission of this evidence under the "plain error" doctrine of appellate review. *See State v. Black* (1995), 270 Mont. 329, 333, 891 P.2d 1162, 1164. Therefore, we hold that Sittner's objection to the District Court's refusal of the proposed jury instruction was waived by Sittner when the instruction was withdrawn from consideration before the District Court, and we decline to address this issue for that reason.

¶15. 2. Was there sufficient evidence presented at trial to support the jury's verdict that Sittner was guilty of felony assault by accountability?

¶16. We review the sufficiency of the evidence to support a jury verdict in a criminal case to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Lantis*, 1998 MT 172, ¶ 32, 962 P.2d 1169, ¶ 32, 55 St. Rep. 694, ¶ 32.

¶17. Sittner contends that insufficient evidence was presented at trial to allow a rational trier of fact to find him guilty of aggravated assault by accountability because neither the jeans nor the shoes worn by him on the evening of the attack had any blood stains on them and the only witness at trial to affirmatively identify Sittner as one of the persons committing the assault on Ashcraft was so unreliable that his testimony should not be allowed to support a conviction. Additionally, Sittner argues that the jury in this case deliberated only one and one-half hours before delivering a verdict, "could not have possibly fully deliberated the evidence during that period of time," and that "there is a more than reasonable possibility that this jury had its collective minds made up prior to having the case submitted to them."

¶18. With regard to the lack of physical evidence connecting Sittner to the assault on Ashcraft, Sittner's mother testified that the jeans worn by Sittner on the evening of the attack had been laundered by her prior to their seizure by law enforcement officers. One of the forensic scientists from the State Crime Lab testified that it was possible any evidence of blood on the jeans could have been destroyed as a result of the laundering. From this testimony, a rational trier of fact could find that the absence of blood on Sittner's jeans was because the jeans were laundered sometime shortly after the assault.

¶19. Also, the State rebutted Sittner's argument at trial that the lack of blood on the shoes purportedly worn by Sittner at the time of the assault militated against a finding that he participated in the beating by arguing that the shoes in question had either been washed prior to their seizure by law enforcement officials or were not, in fact, the shoes worn by Sittner that evening. In support of this theory, the State presented the testimony of Dan Fuchs, a friend of Sittner who had also attended the party that evening.

¶20. Fuchs testified that after the beating, when law enforcement officers began to arrive on the scene, he and Sittner and Davis ran off together into the fields outside the Payton residence. Fuchs further testified that the group traveled for several

hours across uncultivated farmland and other rough terrain until they finally stopped at a Flying J truck stop where Sittner called his mother to come get them. Other evidence presented at trial showed that it had been raining during at least part of the time the group had been traveling through the fields between the Payton residence and the Flying J.

¶21. Not only were there no blood stains on the shoes purportedly worn by Sittner that night, but neither were there any mud or grass stains on them. The State argued to the jury that had those been the shoes worn by Sittner during his lengthy overland trek on the night of the beating, there should have been mud and grass stains on the shoes, unless the shoes had been washed prior to being turned over to law enforcement officers. This theory was bolstered by the fact that the shoes seized from both Stamp and Wallace, who had also run into the fields to escape law enforcement officers the night of the party, had mud and grass stains on them as a result of their flight into the fields.

¶22. Jurors are expected to bring to the courtroom their own knowledge and experience to aid in the resolution of a case. *State v. DeMer* (1988), 234 Mont. 273, 277, 762 P.2d 860, 863. Although Mrs. Sittner testified that the shoes submitted into evidence were the shoes worn by her son on the evening of the assault and that they had not been washed prior to being delivered to investigators, a reasonable trier of fact could conclude from the condition of the shoes that either these were not the shoes worn by Sittner that evening or that the shoes had been washed prior to their seizure.

¶23. Not only was the lack of physical evidence affirmatively connecting Sittner to the assault on Ashcraft sufficiently explained by other evidence at trial, but the fact that the State failed to produce any physical proof of Sittner's participation in the beating does not, of itself, justify reversing a jury verdict where other evidence presented is sufficient to support a conviction. *See State v. Bromgard* (1993), 261 Mont. 291, 295, 862 P.2d 1140, 1142.

¶24. Sittner argues that no such additional evidence exists because the testimony of Dane Estel, the only witness at trial who specifically identified Sittner as one of the group of attackers who kicked Ashcraft repeatedly in the head, was so lacking in credibility that his testimony should not be allowed to support Sittner's conviction. We disagree.

¶25. During its cross-examination of Estel, the defense attempted to discredit the witness with evidence of prior inconsistent statements made by him to investigators. However, the record reveals that although Estel denied witnessing the beating to an investigator for the defense prior to trial, his original statement to law enforcement officers was that he had witnessed the assault on Ashcraft and could identify Sittner as a participant in that assault. Estel later identified Sittner as one of Ashcraft's assailants during a photo lineup conducted by police. Moreover, Estel explained at trial that his reason for denying to defense investigators that he had witnessed the assault was to avoid being involved in the case and being called to testify at trial.

¶26. After hearing Sittner's efforts to discredit Estel and receiving a proper jury instruction regarding the believability and weight to be afforded to the testimony of witnesses, the jury in this case apparently found Estel's testimony credible with regard to whether Sittner participated in the assault on Ashcraft. Such a determination is exclusively within the province of the finder of fact, and we will not disturb such a finding on appeal. *State v. Flack* (1993), 260 Mont. 181, 188, 860 P.2d 89, 94.

¶27. With regard to Sittner's argument that the length of jury deliberations in this case indicates that the jury failed to fully deliberate upon the evidence and that this jury had its collective minds made up prior to the close of trial, we note that apart from the assertions in Sittner's appellate brief, the record is void of any reference to the amount of time this jury spent in deliberation. Moreover, Rule 606(b), M.R.Evid., prohibits inquiry into the validity of a verdict for any reason except

(1) whether extraneous prejudicial information was improperly brought to the jury's attention; or (2) whether any outside influence was brought to bear upon any juror; or (3) whether any juror has been induced to assent to any general or special verdict, or finding on any question submitted to them by the court, by a resort to the determination of chance.

Sittner does not allege, and the record does not support, the application of any of the exceptions set forth in Rule 606(b), M.R.Evid., as a basis for impeaching the jury's verdict in this case. We therefore decline to reverse Sittner's conviction on the grounds that the jury should have deliberated longer before reaching a guilty verdict.

¶28. Viewing the evidence in the light most favorable to the prosecution, we hold that sufficient evidence existed from which a rational finder of fact could find that Sittner

**was guilty of accountability for felony assault on Ashcraft.**

**¶29. Affirmed.**

/S/ J. A. TURNAGE

We concur:

/S/ KARLA M. GRAY

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

/S/ JAMES C. NELSON