FILED

07/08/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0284

DA 24-0284

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 144

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

RYAN PATRICK DONAHUE,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DC-21-491CX
Honorable Peter B. Ohman, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Nicholas Miller, Avignone, Banick & Williams, Bozeman, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Thad Tudor, Assistant
Attorney General, Helena, Montana

          Audrey S. Cromwell, Gallatin County Attorney, Bozeman, Montana

Submitted on Briefs: March 12, 2025

Decided: July 8, 2025

Filed:

_____
Clerk

Chief Justice Cory J. Swanson delivered the Opinion of the Court.

¶1 Ryan Patrick Donahue appeals from a February 1, 2024 order of the Eighteenth Judicial District Court denying his motion for a new trial. The District Court found the clerk of court had substantially complied with statutory procedures regarding notice to potential jurors. Donahue also appeals from several evidentiary rulings made during trial. We affirm.

¶2 We restate the issues on appeal as follows:

*Issue One: Whether the District Court erred in excluding the victim's post-incident statements that he was a fighter.*

*Issue Two: Whether the District Court erred in excluding evidence of the victim's unresolved criminal case.*

*Issue Three: Whether the District Court erred in denying Donahue's motion for a new trial based on substantial compliance with the jury summons statute.*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3 Donahue, then an agent with the Drug Enforcement Administration (DEA), met Marcus Joshlin at a bar in Bozeman on the night of November 21, 2021. While sitting next to each other in the bar, the two struck up a conversation and began buying each other drinks. Joshlin learned Donahue was a DEA agent. Later that night, they made plans to go to a different bar and meet some of Joshlin's friends. Joshlin testified that while they were walking to the next bar, Donahue became convinced Joshlin had a large amount of drugs in his bag. Donahue, smelling of alcohol, put his hand on his concealed firearm and demanded Joshlin give him the bag. After checking the bag and finding no drugs, Donahue apologized and the two continued on their way to the bar.

2

¶4     Joshlin's friends made a plan to continue socializing after the bar closed.  They did not want to include Donahue because he was being "too aggressive at the bar" and they were "a little weirded out."  Joshlin testified Donahue "snapped" when he was told he was not invited.  Donahue then shoved a gun into Joshlin's neck hard enough to leave a red mark.  The two were standing in the bar entrance at the time, and no other witnesses heard the conversation leading to their altercation.  The bar owner and some bystanders disarmed Donahue and called the police.

¶5     The State charged Donahue with Assault with Weapon, in violation of § 45-5-213(1)(b), MCA, and Carrying Concealed Weapon While Under Influence, in violation of § 45-8-327, MCA.  Donahue asserted he would be relying on the affirmative defense of justifiable use of force (JUOF).

¶6     Prior to trial, Donahue filed a motion in limine, seeking a ruling on the admissibility of evidence pertaining to Joshlin's character and credibility.  Specifically, after officers responded to the scene, Joshlin apparently made several comments to police that he was a fighter, such as: "I like to fight" and "I'll go bang that fed right now."  Joshlin had been charged with disorderly conduct two months prior to this incident, also due to a bar fight.  When police had questioned Joshlin on the prior occasion, he initially lied about his identity, his presence at the scene, and the extent of his fault.  The court excluded Joshlin's comments made to the police after the altercation with Donahue, as Donahue had no knowledge of these comments at the time and thus the comments could not support his JUOF defense.  The court did not issue a pretrial ruling on the admissibility of Joshlin's

pending charges, including missed court dates and outstanding warrants. The court allowed inquiry into Joshlin's untruthfulness to police during the prior altercation.

¶7 Contrary to Joshlin's testimony, Donahue testified Joshlin had threatened to kill him as they left the bar. Donahue, feeling that his life was in danger, immediately reacted and pulled his gun on Joshlin. The court did not initially allow Donahue to testify about statements Joshlin had allegedly made to Donahue prior to Joshlin's alleged threat, including statements about being on probation for assault and about selling cocaine. However, the court allowed defense counsel to recall Joshlin on these issues. Joshlin admitted he had spoken with Donahue about prior charges but denied being on probation for assault. He also admitted he had discussed selling drugs when he was younger but denied telling Donahue anything about being involved in the sale of drugs at that time. After hearing Joshlin's recall testimony, Donahue impeached him by stating Joshlin told him at the bar on the night in question that he was currently on probation for assault and currently sold drugs.

¶8 The jury found Donahue guilty on both counts. Donahue moved for a new trial pursuant to § 46-16-702, MCA, arguing the clerk of court did not conform to § 3-15-405, MCA, in notifying potential jury members. After a hearing, the District Court denied Donahue's motion, finding the procedures used for notifying and choosing potential jurors was in substantial compliance with the law and Donahue had presented no evidence he was deprived of a fair and impartial jury. The District Court deferred Donahue's sentence for three years on Assault with Weapon and issued a suspended six-month sentence for Carrying Concealed Weapon While Under Influence. Donahue appeals.

4

## STANDARD OF REVIEW

¶9      A district court has broad discretion in determining the relevance and admissibility of evidence. *State v. Henson*, 2010 MT 136, ¶ 19, 356 Mont. 458, 235 P.3d 1274. We review a district court's evidentiary rulings for an abuse of discretion, which occurs if it acts arbitrarily without conscientious judgment or exceeds the bounds of reason resulting in substantial injustice. *State v. Hoff*, 2016 MT 244, ¶ 11, 385 Mont. 85, 385 P.3d 945. However, to the extent the court's ruling is based on its interpretation of an evidentiary rule, our review is de novo. *State v. Walker*, 2018 MT 312, ¶ 11, 394 Mont. 1, 433 P.3d 202. An erroneous evidentiary ruling constitutes reversible error only when a party's substantial rights are affected. *State v. Zimmerman*, 2018 MT 94, ¶ 13, 391 Mont. 210, 417 P.3d 289; M. R. Evid. 103(a).

¶10     We review a district court's denial of a motion for a new trial for an abuse of discretion. *State v. Hillious*, 2025 MT 53, ¶ 13, 421 Mont. 72, 565 P.3d 1218.

## DISCUSSION

¶11     *Issue One: Whether the District Court erred in excluding the victim's post-incident statements that he was a fighter.*

¶12     The admissibility of evidence is generally dependent upon the purpose for offering the evidence.[1] This case presents the question of whether evidence of the victim's violent character is admissible for the purpose of showing the victim was likely the initial aggressor, even though the same evidence would be inadmissible to show the defendant

---

[1] For example, other crimes, wrongs, or acts are not admissible to prove character to show action in conformity therewith, but may "be admissible for other purposes, such as proof of motive, opportunity . . . ." M. R. Evid. 404(b).

acted reasonably in using the amount of force he did because the defendant was previously unaware of the victim's character. *See Deschon v. State*, 2008 MT 380, ¶ 24, 347 Mont. 30, 197 P.3d 476; *see also State v. Shadwell*, 22 Mont. 559, 573–74, 57 P. 281, 286 (1899). Donahue argues he need not have knowledge of Joshlin's violent character if he is offering the evidence seeking to establish Joshlin was likely the initial aggressor.

¶13     Montana Rule of Evidence 404(a)(2) states:

> (a) Character evidence generally.  Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:
>
> .   .   .
>
> (2) Character of victim.  Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case or in an assault case where the victim is incapable of testifying to rebut evidence that the victim was the first aggressor.

When character evidence is admissible, it may always be proved "by testimony as to reputation or by testimony in the form of an opinion."  M. R. Evid. 405(a).  Additionally, "[i]n cases in which character or a trait of character of a person is an essential element of a . . . defense, or where the character of the victim relates to the reasonableness of force used by the accused in self defense, proof may also be made of specific instances of that person's conduct."  M. R. Evid. 405(b).  We have held that evidence of a violent character is not an essential element of a JUOF defense.  *Deschon*, ¶ 24 (citing *State v. Sattler*, 1998 MT 57, ¶ 45, 288 Mont. 79, 956 P.2d 54).

¶14    Donahue argues Joshlin's statements to police indicating he was "a fighter" are admissible reputation or opinion character evidence under Rule 404(a)(2) and 405(a). Shortly before trial, Donahue filed a motion in limine seeking to introduce Joshlin's statements as self-admitted character evidence.  His argument consisted of a single paragraph citing to Rule 404(a)(2) and *Sattler* for the proposition "[t]his rule allows character testimony, but does not always allow specific *instances* of conduct, except as they bear upon certain factors not at issue in this case."  (Emphasis in original.)  The court addressed the motion prior to voir dire on the first day of trial.  It denied the motion as to the comments Joshlin made to police because they were after the fact, he did not state he had threatened Donahue or was going to fight him, and Donahue had not demonstrated knowledge of Joshlin's character caused him to use the level of force he did.  After Donahue testified, he again raised the court's denial of his motion in limine, arguing only that Rule 404(a)(2) and *Sattler* controlled on the issue of Joshlin's character for violence. The court again denied his motion, stating Donahue had not testified he was aware of this character trait and the comments were made after the fact and not to Donahue.

¶15    In Donahue's opening brief, he again cites only to Rule 404(a)(2) and *Sattler*. However, Donahue clarifies this evidence should be admissible for the jury to determine "whether Joshlin was being truthful or whether there was a reasonable doubt about his claims."  Then, for the first time in his reply brief, Donahue cites *State v. Jones*, 48 Mont. 505, 519, 139 P. 441, 446–47 (1914), and *State v. Logan*, 156 Mont. 48, 64, 473 P.2d 833, 841–42 (1970), for the proposition:

7

While there is some diversity in the opinions of the courts as to whether evidence of the reputation of the deceased is competent for any purpose unless it is known to the defendant at the time of the homicide (and evidence of such knowledge was not introduced at the trial of this case), the weight of authority, we think, gives support to the rule that when, as in this case, *the issue is self-defense and there is doubt as to who was the aggressor, such evidence is admissible in order to enable the jury to resolve the doubt*; for it is entirely in accord with every-day experience that a turbulent, violent man is more aggressive and will more readily bring on an encounter than one who is of the contrary disposition.[2]

(Emphasis added.) Donahue apparently intended to admit this evidence to buttress his testimony that Joshlin was the initial aggressor in the confrontation—not for the typical purpose of showing Donahue's use and level of force was reasonable—which was not at all clear in the District Court or in Donahue's briefing to this Court. We must initially address whether Donahue preserved this issue.

¶16 We will not address an issue raised for the first time on appeal. *City of Missoula v. Williams*, 2017 MT 282, ¶ 26, 389 Mont. 303, 406 P.3d 8; *see also Sattler*, ¶ 48. Similarly, we do not address legal arguments raised for the first time in a reply brief as they are outside the scope of such a brief and would "tilt the balance in a case in favor of the party who gets the final word in presenting its arguments to this Court." *Sattler*, ¶ 47. However, "a party may bolster his preserved issues with additional legal authority or make further arguments

---

[2] *See also* H. H. Henry, *Admissibility of Evidence as to Other's Character or Reputation for Turbulence on Question of Self-Defense by One Charged with Assault or Homicide*, 1 A.L.R.3d 571, §§ 2(a), 3, 8 [hereinafter Henry, *Character Evidence*] ("[W]here the court's attention has been called to the distinction, it has generally been held that evidence of the turbulent character of the . . . party assaulted is admissible on a trial for homicide or assault, as tending to corroborate testimony for the accused as to the circumstances of the conflict, whether the accused had knowledge of such character or not.").

within the scope of the legal theory articulated to the trial court." *State v. Norman*, 2010 MT 253, ¶ 24, 358 Mont. 252, 244 P.3d 737.

¶17 It is a close call whether Donahue's argument in his reply brief is within the scope of the legal argument before the District Court or in his opening brief. Donahue criticizes the State and District Court for conflating Rule 405(a) and (b). However, it is Donahue's inartful arguments before the District Court and briefing before this Court that has led to confusion. Donahue never made a clear argument that the *purpose* for which he was offering this evidence was distinct from persuading the jury the defendant acted reasonably in using the amount of force he did—which requires a foundational showing the defendant knew about the victim's violent character. *E.g.*, *Deschon*, ¶ 24; *State v. Branham*, 2012 MT 1, ¶ 10, 363 Mont. 281, 269 P.3d 891. Without that clear distinction, we do not fault the District Court for its rulings or the State for its arguments. *See* Henry, *Character Evidence*, § 8 (noting the common failure of courts (or in this case, Donahue) to properly distinguish between the different purposes of offering evidence of the victim's violent character).

¶18 Nevertheless, we determine Donahue preserved his argument. *Sattler* cites both *Jones* and *Logan* for the general admissibility of character evidence when the issue of the victim being the aggressor is raised.[3] *See Sattler*, ¶ 41; *Logan*, 156 Mont. at 64–65,

---

[3] Although the identity of the aggressor is not an essential element of a JUOF claim, it can still be relevant to a jury determination of whether the defendant acted reasonably when there is conflicting testimony. *Branham*, ¶¶ 13–14. Moreover, where the evidence shows the defendant was the first aggressor, the defense of JUOF may not be available to him or her. *See* § 45-3-105(2), MCA; *see also State v. Polak*, 2018 MT 174, ¶¶ 25–32, 392 Mont. 90, 422 P.3d 112. *Branham* overruled prior caselaw requiring the defendant to establish he was not the initial aggressor as an

9

473 P.2d at 841–42; *Jones*, 48 Mont. at 518–19, 139 P. at 446–47; *see also* M. R. Evid. 404(a)(2), Comm'n Comments (1976) (noting two purposes for evidence of the victim's violent character: to show the victim was the first aggressor or to show the defendant acted reasonably or used a reasonable amount of force). We also endorsed this purpose for using character evidence of the victim in *State v. Benton*, 251 Mont. 401, 825 P.2d 565 (1992). In *Benton*, the defendant tried to introduce evidence of the victim's pending assault charges, which the district court excluded as irrelevant unless Benton knew of the charges at the time of the fight. *Benton*, 251 Mont. at 403, 825 P.2d at 566. On appeal, Benton cited *Logan* and argued "proof of knowledge of the victim's character by the defendant is unnecessary when the issue concerns which party was the first aggressor." *Benton*, 251 Mont. at 403, 825 P.2d at 566. We agreed "to the extent that probative evidence of [the victim's] character would have been admissible under *Logan* to show that [the victim] was the aggressor. In fact, the [d]istrict [c]ourt allowed Benton to inquire into other instances of [the victim's] conduct in order to show that he had a disposition to violence."

essential element of a JUOF defense. *Branham*, ¶ 13. However, *Branham* did not explicitly overrule every case that had required this as an essential element of JUOF. *See State v. DeMers*, 234 Mont. 273, 280, 762 P.2d 860, 865 (1988); *State v. Popescu*, 237 Mont. 493, 495, 774 P.2d 395, 397 (1989); *State v. Kills on Top*, 243 Mont. 56, 94, 793 P.2d 1273, 1299 (1990); *State v. Arlington*, 265 Mont. 127, 146, 875 P.2d 307, 318 (1994); *State v. Gonzales*, 278 Mont. 525, 534, 926 P.2d 705, 711 (1996); *State v. Miller*, 1998 MT 177, ¶ 23, 290 Mont. 97, 966 P.2d 721. As such, we have inadvertently stated this as an element of JUOF post-*Branham*. *See State v. Redlich*, 2014 MT 55, ¶ 30, 374 Mont. 135, 321 P.3d 82; *State v. Polak*, 2018 MT 174, ¶ 26, 392 Mont. 90, 422 P.3d 112; *State v. Dulaney*, 2025 MT 67, ¶ 23, 421 Mont. 251, 566 P.3d 534. To the extent these cases require a defendant to show he or she was not the first aggressor as an *essential element* of their JUOF defense, we recognize they were overruled in *Branham*. If there is conflicting evidence on the identity of the aggressor, a use-of-force-by-aggressor jury instruction may be given, *see State v. Erickson*, 2014 MT 304, ¶¶ 33–35, 377 Mont. 84, 338 P.3d 598, but it is not an essential element a defendant must *disprove* before being given a JUOF instruction pursuant to §§ 45-3-102, through -104, MCA.

*Benton*, 251 Mont. at 404, 825 P.2d at 566. However, we agreed the evidence lacked probative value and was properly excluded under Rule 403.

¶19     In addition to our caselaw, the "weight of authority" from other jurisdictions favors admission of this evidence regardless of a defendant's prior knowledge for this purpose. *E.g.*, Henry, *Character Evidence* (citing cases); *see also* Michael H. Graham, 3 *Handbook of Fed. Evid.* § 404:4 (9th ed. 2024) ("Regardless however of whether the defendant knew of the reputation or had formed his own opinion, such testimony is admissible when offered through another witness for the purpose of showing the character of the deceased, with the suggested inference that the latter was more probably the aggressor."; collecting cases). Thus, when there is an issue as to the identity of the aggressor, reputation or opinion evidence may be offered as to the character of the victim for violence pursuant to Rule 404(a)(2) and 405(a), regardless of whether the defendant knew about the victim's reputation. *Sattler*, ¶ 41; *Logan*, 156 Mont. at 64–65, 473 P.2d at 841–42; *Jones*, 48 Mont. at 518–19, 139 P. at 446–47.

¶20     This rule is not new in our precedent, nor does it overrule any of our other holdings. We caution attorneys and defendants to clearly articulate the purpose for which they intend to offer character evidence of the victim. There are two purposes we have discussed, each with different foundational requirements. The first purpose—not offered in this case—is to show the defendant acted reasonably in using force. For this purpose, the defendant must show he or she knew about the character of the victim and that knowledge informed their belief the use of force was necessary, and the level of force used was reasonable. *E.g.*, *Branham*, ¶ 10; *State v. Daniels*, 2011 MT 278, ¶¶ 27–28, 362 Mont. 426, 265 P.3d

623; *State v. Cunningham*, 2018 MT 56, ¶¶ 14–15, 390 Mont. 408, 414 P.3d 289. This line of cases is unaffected by our decision today. The second purpose, the one for which Donahue offers his evidence, is to show Joshlin was likely the aggressor. For this purpose, the defendant's knowledge of the victim's character is irrelevant because the purpose of the evidence is to tend to show defendant's version of the evidence is more likely to be true, "for the question is what the [victim] probably did, not what the defendant probably thought the [victim] was going to do." *Evans v. United States*, 277 F.2d 354, 356 (D.C. Cir. 1960) (quotation omitted).

¶21     However, there are other admissibility requirements when evidence is offered for this purpose. First, the defendant must assert self-defense and raise the aggressor's identity at trial. "[T]he existence of the issue of self-defense and an issue as to the aggressor in the altercation is necessary before corroboration by evidence of the [victim's] reputation for turbulence and violence is admissible." *Logan*, 156 Mont. at 64, 473 P.2d at 842; *accord Dupree v. State*, 615 So.2d 713, 720–21 (Fla. Dist. Ct. App. 1993) ("[W]e have found no Florida case in which aggressive character evidence was allowed without evidence as well of self-defense or doubt regarding who was the first aggressor."). Second, as Donahue concedes, this evidence may only come in the form of reputation or opinion evidence under Rule 405(a). *Branham*, ¶¶ 10–11 (disallowing evidence of specific instances of conduct unknown to defendant to show identity of aggressor; Branham did not attempt to offer reputation or opinion character evidence of the victim as allowed under Rule 405(a)). Third, regardless of the purpose and the admissibility under Rules 404 and 405, district courts may still use their discretion under Rule 403 and other rules of evidence

12

to exclude it if necessary. *Accord Benton*, 251 Mont. at 404, 825 P.2d at 566. Fourth, a defendant's introduction of this evidence opens the door by the prosecution to present evidence of the victim's pertinent character "to rebut the same." M. R. Evid. 404(a)(2).

¶22 Joshlin testified Donahue "snapped" and pulled a gun on him after he told Donahue he could not continue to tag along with his friend group. The District Court correctly denied evidence of the identity of the aggressor at this point as self-defense had not yet been raised and no foundation then existed for the testimony. *Logan*, 156 Mont. at 64–65, 473 P.2d at 842. After the State rested, Donahue testified in his defense that Joshlin suddenly threatened to kill him as they were leaving the bar, necessitating his use of force. After Donahue took the stand, evidence of the victim's character for violence was relevant for the jury to determine the likelihood that Joshlin, not Donahue, was the aggressor. *Logan*, 156 Mont. at 64–65, 473 P.2d at 842. After Donahue renewed his motion, the District Court could have admitted reputation or opinion evidence of Joshlin's violent character under Rule 404(a)(2) and 405(a) pursuant to *Jones*, *Logan*, and *Sattler*.

¶23 However, even if Donahue's requested evidence was admissible as proper reputation or opinion evidence,[4] we conclude exclusion did not affect his substantial rights

---

[4] We question whether Joshlin's out-of-court statements to police that he "is a fighter" is proper reputation or opinion evidence allowed under Rule 405. Self-serving statements by a victim likely do not qualify as "reputation in the community," though they may qualify as "opinion." Statements vouching for one's own toughness in a bar fight might also be the verbal equivalent of a bag of hot air. *See generally State v. Pelletier*, 2020 MT 249, ¶ 16, 401 Mont. 454, 473 P.3d 991 (distinguishing between character evidence placed before the jury by the defendant *or* by third-party witnesses); *State v. Gowan*, 2000 MT 277, ¶¶ 22–24, 302 Mont. 127, 13 P.3d 376 (discussing cases where defendant puts his character at issue with defendant's testimony); *U.S. v. Giese*, 597 F.2d 1170, 1190 (9th Cir. 1979) (defendant may testify as to his own opinion of his relevant character traits). However, the parties have not briefed the issue, and we need not decide it here because Donahue has failed to show exclusion of those statements affected his substantial rights.

resulting in prejudicial error requiring reversal. *See Sattler*, ¶ 49. Neither Donahue's arguments nor our review of the record establishes prejudicial error.

¶24 While Joshlin's statement to police that he was a fighter may have been relevant to the issue of whether he was the aggressor, its probity was slight given other evidence of record. Joshlin freely admitted he was intoxicated and high on cocaine on the night in question. Joshlin admitted he initially refused to sign a victim's rights form that evening because he thought the police were bringing charges against him. Jurors heard Joshlin admit to "multiple times -- telling officers that [he] wanted to go beat up Mr. Donahue right then and there," which is essentially the same evidence Donahue is arguing should have been admitted. Joshlin was then asked multiple questions about whether his story was credible given those statements to police.

¶25 Counsel then dove into relentless questioning on Joshlin's recent lies to law enforcement "about being at the scene of [a] fight that they were investigating" at another bar. The jury heard he was given a citation for the previous fight for disturbing the peace. Joshlin testified he had been in trouble with the law before. After being recalled, Joshlin admitted he had discussed his history of charges with Donahue and he had sold drugs when he was younger.

¶26 The jury heard significant evidence indicating Joshlin was a violent, untruthful person, including evidence of specific instances of conduct, which goes beyond mere reputation or opinion testimony. M. R. Evid. 405. It still chose to believe Joshlin's (and other witnesses') story over Donahue's. Donahue being allowed to ask an additional question regarding whether Joshlin told police he was a fighter was of slight additional

14

value in addition to the evidence the jury had already heard and rejected. Donahue has not established he was prejudiced by the District Court's order. *See Garza v. Peppard*, 222 Mont. 244, 249–50, 722 P.2d 610, 613–14 (1986) ("The excluded evidence would not have provided any different information than the jury received through the other testimony and evidence."); *State v. Slavin*, 2004 MT 76, ¶¶ 21–26, 320 Mont. 425, 87 P.3d 495.

¶27 *Issue Two: Whether the District Court erred in excluding evidence of the victim's unresolved criminal case.*

¶28 Donahue next asserts he should have been allowed to inquire into the current status of the case against Joshlin from the fight two months prior to their altercation to show potential bias. Specifically, it seems Donahue wanted to admit documentation showing: Joshlin had failed to appear for a summons in the case against him for disorderly conduct; the police report from the prior bar fight; and the docket of a case against Joshlin out of Hawaii.

¶29 Donahue presented this argument in a motion in limine at the District Court less than two weeks prior to trial. The District Court addressed the motion in limine before voir dire. However, the court only addressed two of the five issues from the motion: the character of the witness (Issue One) and the credibility of the witness (which was allowed). After addressing these two points, the District Court stated, "That's the [c]ourt's ruling. Is that clear enough for everybody?" The defense responded, "It is Your Honor. I'll probably renew the motion further on in trial." Although Donahue renewed the motion as it pertains to character evidence, he never obtained or renewed his request for a ruling on the motive or bias evidence he now argues on appeal.

15

¶30 A motion in limine may preserve an issue for appeal in some instances even though a contemporaneous objection is not made at trial. *State v. Favel*, 2015 MT 336, ¶ 17, 381 Mont. 472, 362 P.3d 1126. However, "we have never allowed a party to preserve an issue based on a motion in limine without the party having obtained a definitive ruling from the district court on the issue." *Favel*, ¶ 19. We concluded in *Favel* that a party must obtain a definitive ruling on the issue from a district court to sufficiently preserve an issue on appeal without an objection at trial. *Favel*, ¶ 21; *see also Two Leggins v. Gatrell*, 2023 MT 160, ¶ 15, 413 Mont. 172, 534 P.3d 668; *Hillious*, ¶ 65.

¶31 Here, the District Court never ruled on the issue of motive or bias and Donahue never raised the issue during trial. Donahue has failed to preserve this issue for appeal. *Two Leggins*, ¶ 15; *Favel*, ¶¶ 21–22. "We will not place 'a district court in error for an action in which the appealing party acquiesced or actively participated.'" *Favel*, ¶ 22 (quoting *State v. Reim*, 2014 MT 108, ¶ 28, 374 Mont. 487, 323 P.3d 880).

¶32 *Issue Three: Whether the District Court erred in denying Donahue's motion for a new trial based on substantial compliance with the jury summons statute.*

¶33 After trial, Donahue moved for a new trial, arguing the clerk of court did not substantially comply with § 3-15-405, MCA, in failing to certify potential jurors who did not respond to a notice asking about their qualifications to serve as jurors. Montana's jury selection statutes contemplate a jury drawn from a fair cross-section of the community. *Hillious*, ¶ 15. Section 3-15-405, MCA, provides:

> The clerk of court shall serve notice by mail on the persons drawn as jurors and require the persons to respond by mail as to their qualifications to serve as jurors. The clerk of court may attach to the notice a jury questionnaire and a form for an affidavit claiming an excuse from service provided for in

16

[§] 3-15-313. *If a person fails to respond to the notice, the clerk shall certify the failure to the sheriff*, who shall serve the notice personally on the person and make reasonable efforts to require the person to respond to the notice.

(Emphasis added.) We utilize a "substantial compliance" standard when there has been a violation of the statutory process governing the formation of a jury—i.e., a statutory violation in the jury selection process warrants reversal only if the lack of compliance affects the randomness and objectivity of the jury pool selection. *Hillious*, ¶ 17 (citing *State v. LaMere*, 2000 MT 45, ¶¶ 55–56, 298 Mont. 358, 2 P.3d 204).

¶34 A substantial violation occurs when the statutory violation affects the random nature or objectivity of the selection process: "Mere technical deviations from the [statute] or even a number of them are insufficient." *Hillious*, ¶ 19 (citing *LaMere*, ¶ 57; *United Stated v. Bearden*, 659 F.2d 590, 601 (5th Cir. 1981)) (quotation omitted). Even if the method used by the clerk is statistically nonrandom, the defendant must show the methods either allowed discriminatory selection of jurors or otherwise prevented jury panels consisting of a fair cross section of the community. *Hillious*, ¶ 19 (citing *Bearden*, 659 F.2d at 602). Thus, a defendant alleging a statutory violation (as opposed to a constitutional violation which Donahue does not allege) must show "the statutory error affected the random selection of his jurors and that the determination of juror excuses, disqualifications, and exclusions was based on subjective criteria." *Hillious*, ¶¶ 21, 27 (citing *LaMere*, ¶ 57).

¶35 Donahue asserts three technical violations with the statute: (1) the clerk giving people multiple options to respond to the questionnaire (online, telephone, email, paper copy) that do not include return by mail; (2) the ability for a potential juror to list dates

17

they are unavailable for jury service; and (3) the exclusion of non-responding jurors from the list of potentially available jurors.

¶36    Donahue's 85 potential jury members were randomly drawn from a pool of 2,935 people who had responded to the clerk's jury questionnaire. Donahue's argument assumes, without presenting evidence, that a larger potential jury pool would better encompass a random selection of jurors. Unlike *LaMere*, Donahue has failed to show that the multiple ways the clerk gave for a potential juror to respond to the questionnaire excluded a group of persons.

¶37    In addition to being improperly raised as a motion for a new trial, *see Hillious*, ¶¶ 34–42 (finding waiver of objection to jury selection statute when not raised pursuant to § 46-16-112, MCA), Donahue has not established these technical violations are associated with exclusion based on subjective criteria of an identifiable group of people entitled to be included in the pool of potentially qualified jurors. *Hillious*, ¶ 30. The intent of the personal service requirement is to ensure there are enough jurors present for a jury to be selected. *Hillious*, ¶ 30. These violations were technical and harmless. Donahue has not shown any prejudice affecting the random selection of the jury pool or that jurors were excluded based on subjective criteria. *Hillious*, ¶ 31.

¶38    Finally, Donahue argues the clerk's automatic procedure of blocking out dates when potential jurors said they were unavailable should require automatic reversal. We have frequently been guided by federal law developed under the Jury Selection and Service Act of 1968 (JSSA). *Hillious*, ¶ 18 (citing *LaMere*, ¶ 56); *see generally* 28 U.S.C. §§ 1861-1878. In *United States v. Carmichael*, 560 F.3d 1270, 1278 (11th Cir. 2009), the

18

Eleventh Circuit Court of Appeals held the jury administrator's policy of granting virtually all deferral requests did not amount to a substantial violation of the JSSA. "Indeed, the Jury Administrator's policy of granting almost all deferrals was almost definitionally objective, in that it did not favor one applicant over any other." *Carmichael*, 560 F.3d at 1278 (quotation and brackets omitted); *see also United States v. Marrapese*, 610 F. Supp. 991, 1000–02 (D.R.I. 1985). Here, there is similarly no evidence the policy caused juries to consist of something other than a fair cross-section of the community or provided opportunity to discriminate against any cognizable group or individuals during selection.

## CONCLUSION

¶39 Any error in not admitting character evidence of Joshlin's violent character was not prejudicial. Donahue did not preserve his argument of evidence showing bias for appeal. Donahue fails to show that any technical violations with the jury notification statute affected the random or objective nature of his jury.

¶40 Affirmed.

/S/ CORY J. SWANSON

We Concur:

/S/ KATHERINE M BIDEGARAY
/S/ INGRID GUSTAFSON
/S/ BETH BAKER
/S/ JIM RICE