No. 04-298

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 120

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

GARY MATTHEW MONTGOMERY,

        Defendant and Appellant.


APPEAL FROM:    District Court of the Eleventh Judicial District,
                         In and for the County of Flathead, Cause No. DC 2002-298(A)
                         The Honorable Ted O. Lympus, Judge presiding.


COUNSEL OF RECORD:

       For Appellant:

            Gary G. Doran, Attorney at Law, Kalispell, Montana

       For Respondent:

            Honorable Mike McGrath, Montana Attorney General, Jim Wheelis, Assistant Attorney General, Helena, Montana; Ed Corrigan, Flathead County Attorney, Daniel Guzynski, Deputy County Attorney, Kalispell, Montana


                         Submitted on Briefs:  December 22, 2004

                                 Decided:  May 11, 2005

Filed:

_____
                     Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Gary Matthew Montgomery (Montgomery) was convicted of negligent homicide. He challenges the Eleventh Judicial District Court's Order granting the State's Motion *in Limine*, and excluding from the trial evidence of the victim's alleged prior violent acts and reputation for violence. We affirm.

## ISSUE

¶2     Did the District Court abuse its discretion in granting the State's Motion *in Limine*?

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     At approximately 3:00 a.m. on May 19, 2001, Montgomery shot and killed Daniel Mitch Nygren (Nygren). The incident followed an evening of drinking among several friends and co-workers. The group ultimately gathered at Montgomery's house at approximately 2:00 a.m., where they played ping-pong and partied in his detached garage while his wife and small children slept in the nearby house. A fight ensued between Montgomery and Nygren after Montgomery accused Nygren of attempted theft. Nygren became very angry over Montgomery's accusation and attacked him. Montgomery, cornered in his garage, grabbed a hoe and first struck Nygren with the handle. Nygren became angrier and continued to try to attack Montgomery. Montgomery then struck Nygren in the head with the blade end of the hoe, causing a bleeding injury. While two of the other guests temporarily restrained Nygren, Montgomery ran into his home, deadbolted the door behind him and started loading his rifle. His wife heard him and asked what was wrong. After being told by Montgomery about his altercation with Nygren, she yelled from the upstairs

2

balcony to the people remaining in the garage that they should leave immediately or she would call the police. The guests responded that they were leaving.

¶4 After ten or fifteen minutes, Montgomery, still shaken and scared by the incident, crossed his backyard, carrying his rifle, to turn off the garage lights and close the garage. He heard a person running down the alley beside his garage, and heard the intruder kick in his back door and enter his home. Montgomery thought he heard his wife yell, "Matt, get in the house." As Montgomery ran to the back door of his home, he saw a large dark shadow moving through the downstairs of his house. When he opened the back door, the intruder charged Montgomery and Montgomery shot him at close range. The intruder, who died as a result of the shooting, was Nygren.

¶5 Montgomery repeatedly insisted before trial that he shot the intruder before he knew it was Nygren. He also told authorities that he had not presumed it was Nygren who had entered his house. At trial, however, he changed his story and testified that he recognized Nygren the instant before shooting him.

¶6 Montgomery was charged with negligent homicide. He provided notice to the court that he intended to rely on the defense of justifiable use of force. Having been present while Montgomery interviewed several witnesses, the State anticipated that Montgomery would seek to introduce testimony at trial regarding specific alleged acts of violence and criminal conduct previously committed by Nygren as well as Nygren's reputation for violence. As a result, the State filed a Motion *in Limine* seeking an order prohibiting Montgomery and his counsel from making reference to Nygren's criminal history, reputation for violence or

previous violent acts. One week before trial, the District Court granted the Motion on the grounds that Montgomery did not know, at the time he fired his weapon, that Nygren was the intruder. Montgomery was convicted of negligent homicide. This appeal follows.

## STANDARD OF REVIEW

¶7 A district court's ruling on a motion *in limine* is an evidentiary ruling and the court has broad discretion in determining whether evidence is relevant and admissible. We will not overturn a district court's determination absent an abuse of that discretion. *State v. Snell*, 2004 MT 334, ¶ 17, 324 Mont. 173, ¶ 17, 103 P.3d 503, ¶ 17 (citation omitted).

## DISCUSSION

¶8 Montgomery argues that the District Court erred in precluding him from introducing evidence of his knowledge of Nygren's alleged past violent behavior. He maintains that the events of the evening and his knowledge of Nygren's violent history led to his reasonable fear and apprehension and his decision to arm himself. He therefore argues that his actions leading to Nygren's death, including carrying his shotgun, were not negligent and were taken out of fear and the desire to protect himself and his family from the danger of serious bodily harm or death. Montgomery further asserts that evidence of Nygren's violent character is admissible under the second prong of Rule 405(b), M.R.Evid., because it "relates to the reasonableness of force used by [Montgomery] in self defense." Montgomery complains that the District Court's failure to allow him to explain to the jury what he knew of Nygren's previous acts of violence prevented Montgomery from receiving a fair trial, and allowed the

4

State to persuade the jury that Montgomery's actions that night were negligent rather than reasonable.

¶9 The State asserts that because Montgomery repeatedly insisted before trial that at the time he shot Nygren, he did not know, nor did he presume, that the intruder was Nygren, Montgomery's knowledge of Nygren's violent tendencies could not have been a factor in the shooting. In other words, Montgomery did not see Nygren charging him and conclude, based on his knowledge of Nygren's violent nature or past, that he had to shoot Nygren to protect himself or his family from "imminent death or serious bodily harm." *See* § 45-3-102, MCA. Without knowledge of the victim's identity, the State maintains, evidence of the victim's character, whether violent or not, is irrelevant and therefore inadmissible.

¶10 Furthermore, the State notes, a violent character trait is not an "essential element" of the defense of justifiable use of force under the first prong of Rule 405(b), M.R.Evid.; rather, under *State v. Sattler*, 1998 MT 57, ¶¶ 43-46, 288 Mont. 79, ¶¶ 43-46, 956 P.2d 54, ¶¶ 43-46, evidence of a victim's violent character is admissible to demonstrate the reasonableness of force in a justifiable use of force defense. The State maintains, however, that such evidence was unnecessary in the case before us, both for the foregoing reasons, and because it was the events of the evening and Nygren's behavior immediately before his death that led Montgomery to the ultimate use of deadly force. The State reports that at no time during Montgomery's offer of proof did he state that he was frightened of Nygren for any reason other than Nygren's behavior on this specific evening, or that he armed himself because he knew of Nygren's purported violent past. As a result, evidence of Nygren's alleged past

5

violent acts was irrelevant and cumulative, and therefore exclusion of that evidence was correct.

¶11 The District Court, in its Order granting the State's Motion *in Limine* just days before Montgomery's trial, concluded that:

> any knowledge of Nygren's propensity for violence is relevant to [Montgomery's] claim of justifiable use of force only if [Montgomery] knew it was Nygren who was in his house and at whom [Montgomery] was shooting. If, as [Montgomery] asserts, he did not know who was rushing out from his house, then it is immaterial whether the intruder had a history of violence. Only if [Montgomery] knew it was Nygren at whom he was shooting, and he feared Nygren based on his understanding of Nygren's history of violence, would evidence of Nygren's violence be relevant. Thus, where the evidence is irrelevant based on [Montgomery's] theory of defense, such evidence must be barred.

¶12 On the first morning of Montgomery's trial, Montgomery learned that the District Court had granted the State's Motion *in Limine*. Montgomery sought to persuade the court to change its ruling, arguing that despite his previous statements, he did in actuality recognize Nygren immediately before shooting him. The District Court declined to reconsider the issue at that time, but indicated that Montgomery would have another opportunity to request reconsideration. Subsequently, on the morning of the second day of trial and at the conclusion of Montgomery's testimony, Montgomery again requested that the District Court set aside its Order granting the State's Motion *in Limine*, and allow him to introduce testimony of Nygren's alleged past crimes and violent nature.

¶13 The State countered that Montgomery was changing his position simply to conform with the law that would allow negative evidence about Nygren to be introduced. The State

reminded the court that in every interview conducted near the time of the incident, including taped interviews, Montgomery stated that he did not know it was Nygren. Without such knowledge, the State asserted, any evidence of the victim's character or past crimes is inadmissible. The State also noted that not only had Nygren never been *convicted* of the crimes Montgomery alleged Nygren committed, he had never been *charged* with them. The State maintained, therefore, that *even if* Montgomery recognized Nygren just before shooting him, testimony of alleged, uncharged crimes or conduct would be overwhelmingly prejudicial, would have little probative value, and should be excluded.

¶14     After considering both parties' arguments, the District Court stated:

> In the testimony of [Montgomery] most proximate to the event he clearly stated he did not know who the person was that charged him out the door into whom he discharged the shotgun. . . . [F]or the reasons given in the order upon its entry, the [c]ourt reaffirms its ruling, and, accordingly, [Montgomery's] motion is denied.

¶15     Rules 404 and 405, M.R.Evid., address the admissibility of "character" evidence. Rule 404(a)(2), M.R.Evid., provides:

> (a)  Character evidence generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:
>
> . . .
>
> (2) Character of victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, . . . or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case or in an assault case where the victim is incapable of testifying to rebut evidence that the victim was the first aggressor.

7

¶16     Rule 405(a) and (b), M.R. Evid., prescribe the methods by which a victim's character may be proved:

> (a)   Reputation or opinion. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion.   On cross-examination, inquiry is allowable into relevant specific instances of conduct.
>
> (b)   Specific instances of conduct.  In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, or where the character of the victim relates to the reasonableness of force used by the accused in self defense, proof may also be made of specific instances of that person's conduct.

¶17     While distinguishable, *City of Red Lodge v. Nelson*, 1999 MT 246, 296 Mont. 190, 989 P.2d 300, cited by both parties, is instructive.  In *Nelson*, William Nelson was convicted in the City Court of Red Lodge of partner assault after being found guilty of repeatedly striking his partner, Donna, in the face and breaking her jaw.  Nelson appealed his conviction to district court and requested a *de novo* trial by jury.  After providing notice that he intended to argue self-defense and introduce evidence at trial of Donna's previous convictions for assault, the City of Red Lodge filed a motion *in limine* to prohibit Nelson from introducing such evidence.  The district court granted Red Lodge's motion and we affirmed.

¶18     As does Montgomery, Nelson relied on the second prong of Rule 405(b), M.R.Evid., which allows introduction of specific instances of conduct "where the character of the victim relates to the reasonableness of the force used by the accused." *Nelson*, ¶ 12.  In *Nelson*, noting that Nelson actually relied on the defense of "accident" rather than "self-defense," this Court observed, "assuming *arguendo* that Nelson relied on the defense of self-defense, . . .

8

evidence of [Donna's] prior convictions for assault lacked relevance [under the second prong of Rule 405(b), M.R.Evid.,] because Nelson never asserted that he knew of those convictions when he struck her." *Nelson*, ¶ 19.  The Court also stated that Donna's previous convictions lacked relevance under the first prong of Rule 405(b), M.R.Evid., because a victim's character for violence is not an "essential element" of the defense of justifiable force.  In other words, Nelson would have to establish that he knew of Donna's past convictions and that his knowledge of those convictions led him to use the level of force he did.  He could not do so.

¶19     This analysis is applicable here.  Unlike Nelson, Montgomery does not argue any defense other than self-defense.  However, like Nelson, in order to introduce Nygren's alleged prior bad acts to establish that his use of force against Nygren was reasonable, he must establish that he knew he was shooting Nygren, that he knew of Nygren's past violent conduct, and that his knowledge of this conduct led him to use the level of force he did.  Assuming that Montgomery's statements made near the time of the incident were truthful and Montgomery did not know it was Nygren who was attacking him, under *Nelson*, Nygren's past was irrelevant.  Under Rule 402, M.R.Evid., evidence which is not relevant is not admissible.

¶20     In granting the State's Motion *in Limine*, the District Court did not give any credence to Montgomery's testimony at trial that he did recognize Nygren just before shooting him.  Assuming *arguendo*, that Montgomery did, in fact, recognize Nygren a "split second" before shooting him, our conclusion here remains the same.  Montgomery failed to establish that

9

his knowledge of Nygren's past conduct was instrumental in reaching his decision to shoot. Montgomery's knowledge of Nygren's criminal past appeared to be limited and he failed to show, in his offers of proof, any connection between Nygren's past and his use of force. Rather, Montgomery's testimony regarding the events that transpired on the evening of the shooting simply showed that Montgomery's fear of Nygren was based on Nygren's behavior just before the shooting. Since Montgomery did not establish that his knowledge of Nygren's past led him to use the level of force he employed, Nygren's past was irrelevant and inadmissible.

¶21 For the foregoing reasons, we conclude that the District Court did not abuse its discretion in granting the State's Motion *in Limine*.

## CONCLUSION

¶22 The District Court is affirmed.

/S/ PATRICIA O. COTTER

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ JIM RICE

10