FILED

November 18 2014

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 13-0312



DA 13-0312

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 304

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

KENNETH A. ERICKSON,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Twelfth Judicial District,
In and For the County of Hill, Cause No. DC 11-023
Honorable Daniel A. Boucher, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Kenneth R. Olson, Olson Law Office, P.C., Great Falls, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Jonathan M. Krauss, Assistant Attorney General, Helena, Montana

          Gina Dahl, Hill County Attorney, Havre, Montana

Submitted on Briefs:  July 23, 2014
Decided:  November 18, 2014

Filed:

_____
                  Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1    The State charged Kenneth Erickson in the Twelfth Judicial District Court, Hill County, with aggravated assault or, in the alternative, criminal endangerment. Erickson gave notice that he would rely on the affirmative defense of justifiable use of force. A three-day jury trial was held in February 2013. At the close of the State's case-in-chief, Erickson moved to dismiss on the ground that the State had not presented sufficient evidence to prove that he was not justified in his use of force. The District Court denied the motion. The jury ultimately found Erickson guilty of criminal endangerment and not guilty of aggravated assault. He now appeals, raising two issues:

Issue 1:    Whether the State presented sufficient evidence to prove that Erickson was not justified in his use of force.

Issue 2:    Whether the District Court abused its discretion in giving the jury an "aggressor" instruction pursuant to § 45-3-105(2)(a), MCA.

We affirm as to both issues.

## BACKGROUND

¶2    The charges against Erickson arose out of an altercation he had with Gene Johnson in the parking lot outside the Golden Spike Bar in Havre at approximately 1:00 a.m. on April 23, 2011. The altercation ended when Erickson struck Johnson in the face with a single punch, causing Johnson to fall to the pavement and hit the back of his head. At the time, Johnson was 34 years old, six feet, two inches tall, and roughly 185 pounds. Erickson was 47 years old, five feet, seven inches tall, and 145 pounds. Erickson claimed that he acted in self-defense; however, he, Johnson, and other witnesses gave varying accounts as to how the altercation unfolded.

2

¶3     William McDaniel testified that he and a friend had just arrived at the bar when he noticed two men (Erickson and Johnson) outside near the side door. The men were "right up in each other's face, . . . just cursing back and forth." McDaniel estimated that he witnessed about ten seconds of the incident. He saw Johnson put his hands in his pockets and turn his head, as though he was backing down. At that point, Erickson struck Johnson, and Johnson fell to the ground. McDaniel did not notice either of the men shoving each other, and he did not believe that Johnson physically threatened Erickson. In McDaniel's view, Johnson did not expect to be punched.

¶4     Stefan Johnson (unrelated to the victim, Gene Johnson) testified that he arrived at the bar with McDaniel and witnessed roughly 20 seconds of the altercation. Stefan saw Erickson and Johnson "in each other's faces" arguing. Erickson seemed more excited or angry than Johnson. Stefan did not notice any pushing or shoving. He recalled that Johnson's hands were down at his side when the punch occurred. Stefan testified that Johnson did not appear to have a threatening demeanor. Based on what he saw, Stefan did not believe that Erickson acted in self-defense.

¶5     Tyler Sheppard and his brother Scott Sheppard were outside the bar that evening. Tyler testified that he observed Johnson come out of the bar, with Erickson right behind him. The two men began arguing and "getting in each other's faces" near the side door. Tyler saw Erickson push Johnson, but he did not see Johnson push back. Tyler did not see Johnson make any aggressive movements. Tyler observed that Johnson's hands were in his pockets and that he "was kind of shrugging his shoulders" and "blowing [Erickson] off." It seemed Johnson did not expect things to escalate. Nevertheless, Erickson then

3

punched Johnson, who "looked like he was out as soon as he got hit." Erickson seemed concerned and attempted to revive Johnson. Tyler estimated that the altercation lasted a minute or two. On cross-examination, he admitted that he had not heard all that Erickson and Johnson said and, thus, it was possible that Johnson threatened Erickson during the altercation. Tyler noted, however, that "neither one of them [seemed] really scared."

¶6 Scott Sheppard testified that he saw Johnson back out the door of the bar with Erickson following close behind. It appeared to him that Erickson and Johnson may have exchanged words inside the bar. Given the crowd and the loud music, Scott could not hear what the two men were saying, but it seemed from their body language that they were arguing. They were "bumping chests" and getting "in each other's face." Scott testified that Erickson shoved Johnson just before punching him. Johnson's hands were in his pockets and he did not block or deflect the punch.

¶7 Tony Smith also witnessed the incident. When he first saw Erickson and Johnson, they were already engaged in a verbal confrontation with "a lot of swearing." He saw Johnson poke Erickson in the chest and Erickson push back. Then a "shoving match back and forth" ensued. Smith thought both men were acting "quite aggressive." There was "sort of a break in the action"—it became more verbal than physical—just before the punch occurred. Smith heard Erickson say, "I'm going to knock you out." He testified that Johnson's hands were at his side when Erickson punched him.

¶8 Beth Hannah, Johnson's girlfriend at the time, testified that she and Johnson were out with friends earlier that evening and saw Erickson while at two other bars. Although Johnson did not interact with Erickson at either of these establishments, he "wasn't very

4

thrilled" to see Erickson. Hannah explained that Johnson had previously been charged with driving under the influence, and he believed this was due to a false report that Erickson had given the police. Nevertheless, Hannah testified that Johnson did not react angrily when he saw Erickson that evening. She stated that he was in "a really good mood." Hannah further testified that she provided care for Johnson after his release from the hospital. She discussed the extent of his injuries. He suffered a subdural hematoma and partial brain damage. He also suffered some hearing loss, and his memory, cognitive and verbal skills, and impulse control have been diminished. He has suffered seizures, which are being treated with medication. One side of his face is "completely slack." He is volatile and easily angered, which was not his disposition prior to the altercation.

¶9 Johnson testified at trial. He stated that it was difficult to remember all of the details of the altercation with Erickson. What he could remember is that he went to the Golden Spike with friends and sat at the far end of the bar. He had a couple of beers and then went outside to smoke a cigarette. He recalled seeing Erickson outside and, at some point, saying: "Well, what are you going to do? That's what I thought. Nothing." He remembered having his hands in his pockets and turning away from Erickson. The next thing he remembered is waking up in the hospital. Under cross-examination, Johnson acknowledged that, before the altercation, he had ill feelings toward Erickson because of the DUI charge. But he denied being angry or holding a grudge against Erickson.

¶10 Sergeant Mike Labaty of the Havre Police Department testified that he was dispatched to the bar at 1:24 a.m. and arrived a few minutes later. Labaty photographed the scene and obtained initial statements from several witnesses. He and a second officer

searched in and around the bar but were unable to locate Erickson, who had already left. Labaty then proceeded to the hospital, where Johnson had been transported.

¶11     Meanwhile, Erickson telephoned the police station at around 2:00 a.m. Labaty returned the call at around 3:00 a.m. Labaty and Erickson again spoke by telephone at 3:45 p.m. later that day. Recordings of the conversations were played for the jury during Labaty's testimony. In the first call, Erickson alleged that Johnson had "harassed" him and was "being a dickhead." Erickson claimed he had no idea what they were arguing about. He stated that Johnson pushed him, that he "pushed" Johnson back, and that Johnson tripped, fell, and hit his head. He made no mention of punching Johnson; he implied that Johnson's fall was accidental. He also did not state that he had felt threatened by Johnson. He admitted leaving the scene, but explained that he was scared in light of Johnson's injury. In the second call, Erickson stated that he had spoken with an attorney who had advised him not to give any further statements. He did say, however, that he believed he had acted in self-defense.

¶12     In the days following the altercation, Labaty and other officers obtained follow-up statements from nine individuals. Labaty testified that not a single witness stated that Johnson had attempted to hit or strike Erickson. On cross-examination, defense counsel asked Labaty: "[I]f somebody's harassing and harassing you and shoving you and being a dickhead to you, wouldn't that imply to you that the person is acting in a threatening way?" Labaty declined to "imply" anything, but he did note that, in these types of cases, people typically mention right away that they were trying to defend themselves. Erickson had not done that here.

6

¶13 Also on cross-examination, defense counsel challenged the adequacy of Labaty's investigation. In particular, counsel focused on what Labaty had, or had not, done to investigate Erickson's self-defense claim. Labaty noted that he had been precluded from obtaining further details about this claim from Erickson himself, given Erickson's refusal to talk to him. But Labaty indicated that he did obtain information from two witnesses potentially supporting Erickson's claim. First, Chalon Kinholt reported that he had witnessed the altercation and heard Johnson tell Erickson, "I'm going to kick your ass." Second, Hannah told Labaty about Johnson's belief that Erickson had reported him for DUI—which could have been a motive for Johnson to confront Erickson. Nevertheless, defense counsel faulted Labaty for not conducting further interviews and investigations, and suggested that because Labaty had not done "a thorough and complete investigation into the issues of self-defense in this case," the State "has not and cannot prove beyond a reasonable doubt that Kenneth Erickson was not acting legally to defend himself that evening." This remark drew an objection from the prosecutor, which the court sustained.

¶14 At the close of the State's case-in-chief, which consisted of testimony from the foregoing witnesses, Erickson moved to dismiss for insufficient evidence. Of relevance to this appeal, he argued that the State had not met its burden under § 46-16-131, MCA, of proving that Erickson's actions were unjustified. The court denied the motion.

¶15 Erickson called Kinholt as his first witness. Kinholt testified that on the night of the altercation, he received a call from Erickson shortly before 1:00 a.m. inviting him to the Golden Spike for beers. Upon arriving, Kinholt saw Erickson and Johnson in "some kind of confrontation." They were standing a couple feet apart, yelling at each other.

7

According to Kinholt, Johnson seemed "enraged" and was making "angry motions" with his hands. Kinholt stated that he heard Johnson tell Erickson, "I'm going to kick your [expletive] ass." Kinholt went over "to try and stop it" but was pulled back by Tyler Sheppard.[1] Kinholt testified that Johnson and Erickson shoved each other several times. He further testified, contrary to every other witness, that Johnson then came at Erickson with his fists in the air, at which point Erickson punched Johnson in the face. In Kinholt's view, Erickson acted in self-defense. Kinholt stated that he (Kinholt) provided aid by holding Johnson's head up off the pavement until EMTs arrived and that he later spoke with officers inside the bar. During the State's rebuttal, however, Labaty testified that a different individual was holding Johnson's head when EMTs arrived and that he did not see Kinholt (whom Labaty knew) anywhere at the scene that night.

¶16 Erickson next called his former brother-in-law, Tim Munyan, who was acquainted with Johnson. Munyan testified that about six months before the altercation, Johnson stated that he believed Erickson had reported him to the police, causing him to be charged with DUI. According to Munyan, Johnson referred to Erickson as a "son of a bitch." Munyan further testified that about two months before the altercation, Johnson told Munyan: "I will catch that son of a bitch and kick his ass." Concerned that Johnson would carry out this threat, Munyan warned Erickson "to really watch himself." In response, Erickson told Munyan that he did not know Johnson and that he knew nothing about the DUI incident.

---

[1] Tyler testified about this earlier in the trial, explaining that it appeared Kinholt "was going to jump in" to the fray and "start swinging." Tyler thus pulled Kinholt back, stating: "Hey, I think they're just talking. Let them sort it out."

8

¶17    Erickson also called John Stevenson, who had been at the Golden Spike with him on the night in question.  Stevenson was inside the bar during the altercation and thus did not witness it.  Stevenson testified that Erickson went outside for about five minutes and appeared "distraught" when he returned.  Erickson said they needed to leave because he had been in a fight and punched a guy.  Erickson stated that the guy (Johnson) was very aggressive and twice his size.  Erickson told Stevenson, "I felt like I had to strike first."

¶18    Erickson testified in his own defense.  He explained that it had been hot inside the bar and so he went outside to cool off.  He testified that he walked five to ten steps out the door, and "[t]he next thing I know some guy is standing over top of me calling me a prick and an asshole."  Erickson assumed this was a disgruntled car owner whose vehicle had been towed by Erickson's towing company at law enforcement's behest.  According to Erickson, the man (Johnson) was drunk, angry, and belligerent and stated: "I'm going to kick your ass."  Erickson testified that he tried to talk his way out of the situation, but Johnson would not back down.  Erickson admitted threatening Johnson: "Leave me alone or I'm going to knock you out."  The two men shoved each other several times, and then Erickson decided "to pop [Johnson] in the nose," "water his eyes," and "get the hell out" of there.  Erickson proceeded to punch Johnson, causing him to fall to the ground.  He believed that the entire altercation lasted two to three minutes and that the time from when the pushing started to when he threw the punch was about 20 seconds.  He testified that he believed it was necessary to use force against Johnson because "I was afraid I was going to get my ass kicked."

9

¶19 The jury found Erickson not guilty of aggravated assault and the lesser included offense of assault, but guilty of criminal endangerment. The District Court deferred imposition of sentence for a period of six years, subject to various conditions. The court also ordered Erickson to pay restitution of $324,215.31, most of which was attributable to Johnson's medical expenses.

## STANDARDS OF REVIEW

¶20 At the close of the prosecution's evidence or at the close of all the evidence, the defendant may move to dismiss the action on the ground that the evidence is insufficient to support a finding or verdict of guilty. Section 46-16-403, MCA. A motion to dismiss for insufficient evidence is appropriate only if, viewing the evidence in the light most favorable to the prosecution, there is not sufficient evidence upon which a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *State v. Rosling*, 2008 MT 62, ¶ 35, 342 Mont. 1, 180 P.3d 1102. We review the denial of a motion to dismiss for insufficient evidence de novo. *Rosling*, ¶ 33.

¶21 A district court has broad discretion when it instructs the jury, and we thus review a district court's decision regarding jury instructions for abuse of discretion. *State v. Bieber*, 2007 MT 262, ¶ 22, 339 Mont. 309, 170 P.3d 444. A district court's discretion is restricted, however, by the overriding principle that the instructions, as a whole, must fully and fairly instruct the jury on the law applicable to the case. *State v. Hovey*, 2011 MT 3, ¶ 10, 359 Mont. 100, 248 P.3d 303; *Bieber*, ¶ 22.

10

**DISCUSSION**

¶22 *Issue 1: Whether the State presented sufficient evidence to prove that Erickson was not justified in his use of force.*

¶23 Erickson was convicted of criminal endangerment, which is defined as follows: "A person who knowingly engages in conduct that creates a substantial risk of death or serious bodily injury to another commits the offense of criminal endangerment." Section 45-5-207(1), MCA. The parties stipulated that the injuries suffered by Johnson constitute "serious bodily injury." The issue was whether Erickson knowingly engaged in conduct that created a substantial risk of such injuries. The State argued that Erickson did so by initiating a verbal confrontation with Johnson outside a bar on an asphalt parking lot, and then escalating it into a physical altercation during which he struck Johnson in the face with a closed fist, causing Johnson to fall back and hit his head on the ground.

¶24 Erickson relied on the affirmative defense of justifiable use of force, which is set forth in Title 45, chapter 3, part 1, MCA. Pursuant to § 45-3-102, MCA, a person is justified in the use of force when and to the extent he reasonably believes that such conduct is necessary to defend himself against the imminent use of unlawful force by another person. However, the person is justified in the use of force that is likely to cause death or serious bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or serious bodily harm to himself or to prevent the commission of a forcible felony. Section 45-3-102, MCA.

¶25 The State must prove the elements of an offense beyond a reasonable doubt. *State v. Daniels*, 2011 MT 278, ¶ 33, 362 Mont. 426, 265 P.3d 623. Prior to 2009, the State

11

was not required to prove the absence of justification. *Daniels*, ¶ 13. In 2009, however, the Legislature enacted legislation designed to shift the burden to the State to prove the absence of justification in self-defense claims. *Daniels*, ¶ 14. Section 46-16-131, MCA, states: "In a criminal trial, when the defendant has offered evidence of justifiable use of force, the state has the burden of proving beyond a reasonable doubt that the defendant's actions were not justified." Justifiable use of force is still an affirmative defense—which we have defined as one that admits the doing of the act charged, but seeks to justify, excuse, or mitigate it—and the initial burden of evidence production is still on the defendant. *Daniels*, ¶ 15; §§ 45-3-115, 46-16-131, MCA. But if the defendant offers evidence of justifiable use of force, then the ultimate burden of proof shifts to the State. *Daniels*, ¶ 15; § 46-16-131, MCA. The State concedes in the present appeal that the burden was shifted to the prosecution in this case.

¶26 Erickson contends that the State did not meet its burden of proving beyond a reasonable doubt that his actions were not justified. He argues two theories, one focused on Sergeant Labaty's investigation and the other focused on the evidence. As to the first theory, Erickson relies on § 45-3-112, MCA (also enacted in 2009), which states: "When an investigation is conducted by a peace officer of an incident that appears to have or is alleged to have involved justifiable use of force, the investigation must be conducted so as to disclose all evidence, including testimony concerning the alleged offense and that might support the apparent or alleged justifiable use of force." Erickson asserts that Labaty failed to comply with this statute because he did not interview certain witnesses, did not re-interview other witnesses, and did not investigate all "self-defense issues" in

12

the case, such as Johnson's medical history and how intoxicated he and Erickson were that night. Erickson argues that if Labaty had investigated these matters, he would have realized that Johnson was the initial aggressor and that Erickson acted in self-defense. Erickson suggests (as reflected in his questioning of Labaty at trial) that Labaty's alleged failure to conduct "a thorough and complete investigation into the issues of self-defense in this case" means that the State cannot prove beyond a reasonable doubt that Erickson's actions were unjustified. We reject this argument for two reasons.

¶27 First, four months prior to Erickson's trial, this Court analyzed § 45-3-112, MCA, and concluded that nothing in the language of the statute requires law enforcement to conduct an independent investigation for the defense in every case involving justifiable use of force. We held that the statute requires an officer conducting an investigation in such cases to make available for disclosure to the defense all evidence the officer discovers that might support the defense of justifiable use of force. *State v. Cooksey*, 2012 MT 226, ¶¶ 33-38, 366 Mont. 346, 286 P.3d 1174. Nothing in the record here indicates that Labaty failed to make available for disclosure to Erickson all evidence he discovered during his investigation. Second, even if Labaty could have conducted more interviews and uncovered more evidence, as Erickson alleges, this does not mean that the evidence which Labaty did uncover and which the State ultimately did present at trial was insufficient as a matter of law. As the State correctly points out, the issue is not whether some hypothetical investigation would have turned up more evidence of Erickson's defense. It is whether the evidence that law enforcement did find and that the State did present was itself sufficient to avoid dismissal.

¶28     This leads to Erickson's second theory, which is that the evidence at trial supports his position rather than the State's. He argues that the evidence proved the following: Johnson believed Erickson had caused him to be charged with DUI; Johnson angrily confronted Erickson about this issue; Johnson was substantially younger and bigger than Erickson; Johnson was belligerent, threatening, and apparently drunk; Johnson subjected Erickson to profane name-calling, threats, and insulting and provoking shoves; Erickson reasonably believed that Johnson was intent on carrying out his stated threat "to kick [Erickson's] ass"; Erickson feared Johnson would do so imminently; he punched Johnson in response to the imminent threat that he perceived; and he used the amount of force he reasonably believed was necessary to defend himself. It is true that this version of the altercation is one possible interpretation of the evidence. But, again, the issue here is not whether there is evidence sufficient to support a finding favorable to the defendant. *Cf. State v. Weigand*, 2005 MT 201, ¶ 7, 328 Mont. 198, 119 P.3d 74. It is whether, viewing the evidence in the light most favorable to *the prosecution*, there is sufficient evidence upon which a rational trier of fact could find, beyond a reasonable doubt, that the defendant's actions were not justified. *Rosling*, ¶ 35; § 46-16-131, MCA.

¶29     Because Erickson's argument is that the District Court should have granted his mid-trial motion to dismiss made at the close of the State's case-in-chief, our focus is on the evidence presented in the State's case-in-chief. In this regard, although some of the testimony was conflicting, the existence of conflicting testimony does not render the evidence insufficient. *State v. Wood*, 2008 MT 298, ¶ 43, 345 Mont. 487, 191 P.3d 463. Determinations of the credibility and the weight of testimony are within the exclusive

province of the jury, *Wood*, ¶ 43, and the jurors here were so instructed. They were also instructed that "[t]he evidence presented by one witness, whom you believe, is sufficient for the proof of any fact in this case."

¶30 The testimony of the State's witnesses, if believed, would establish the following. The altercation lasted about a minute, perhaps two. Johnson walked out of the bar first, with Erickson pursuing close behind. An argument ensued, during which the men were "in each other's faces." Erickson seemed more excited or angry than Johnson. Johnson did not have a threatening demeanor and made no aggressive movements. He shrugged his shoulders and appeared to be "blowing [Erickson] off." Johnson's conduct did not suggest any escalation. Nevertheless, Erickson shoved Johnson and told him, "I'm going to knock you out." Erickson then punched Johnson in the face. At that point, Johnson's hands were in his pockets or at his side, and he was turning away. When Erickson first spoke with Sergeant Labaty that night, he made no mention of feeling threatened by Johnson or acting in self-defense. He claimed only that Johnson had harassed him and was being "a dickhead," and he characterized Johnson's fall as accidental.

¶31 Viewing the testimony in the light most favorable to the prosecution, we conclude that there was sufficient evidence upon which a rational trier of fact could find, beyond a reasonable doubt, Erickson was unreasonable in believing that there was an imminent use of unlawful force by Johnson and that the force Erickson used was necessary to prevent imminent death or serious bodily harm to himself. Section 45-3-102, MCA. The District Court did not err in denying his motion to dismiss.

15

¶32　*Issue 2: Whether the District Court abused its discretion in giving the jury an "aggressor" instruction pursuant to § 45-3-105(2), MCA.*

¶33　Following the close of all the evidence, the District Court gave the jury several instructions relating to justifiable use of force. Included in these was Instruction No. 27:

> The use of force in defense of a person is not available to a person who purposely or knowingly provokes the use of force against himself unless such force is so great that he reasonably believes that he is in imminent danger of death or serious bodily harm and that he has exhausted every reasonable means to escape such danger other than the use of force which is likely to cause death or serious bodily harm to the assailant.

This is a nearly verbatim recitation of § 45-3-105(2)(a), MCA, which concerns "[u]se of force by aggressor." Erickson objected to this instruction on the basis that he was not the aggressor. In response, the State argued that conflicting testimony had been presented about who was the initiator or provoker of the altercation. The District Court agreed and overruled Erickson's objection.

¶34　On appeal, Erickson again argues that the District Court should not have given Instruction No. 27 because "it allowed the jury to conclude that [he] was the aggressor." He asserts the evidence "clearly establishes" that Johnson, not Erickson, "provoked the confrontation herein." The State responds that there was testimony from eyewitnesses indicating that Erickson was the aggressor and, thus, Instruction No. 27 was necessary to fully and fairly instruct the jury on the applicable law. We agree with the State.

¶35　The trial judge is under a duty to instruct the jury on every issue or theory finding support in the evidence, and this duty is discharged by giving instructions which accurately and correctly state the law applicable in a case. *State v. Robbins*, 1998 MT 297, ¶ 36, 292 Mont. 23, 971 P.2d 359, *overruled on other grounds by State v. LaMere*,

16

2000 MT 45, ¶¶ 25, 61, 298 Mont. 358, 2 P.3d 204. An instruction must be supported either by direct evidence or by some logical inference from the evidence presented. *State v. Hudson*, 2005 MT 142, ¶ 17, 327 Mont. 286, 114 P.3d 210. Based on the testimony discussed above, there was sufficient evidence for the jury to infer that Erickson was the aggressor. The testimony, if believed, established that he pursued Johnson from the bar, and may have approached Johnson from behind. The testimony further establishes that Johnson did not have a threatening demeanor and made no aggressive movements; that Johnson had his hands in his pockets or at this sides; that Erickson shoved Johnson and then punched him; and that Erickson, by his own admission, "felt like [he] had to strike first." A rational trier of fact could find from this evidence that Erickson purposely or knowingly provoked Johnson. Section 45-3-105(2)(a), MCA. We conclude, therefore, that the District Court did not abuse its discretion in giving Instruction No. 27.

¶36 Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ JAMES JEREMIAH SHEA
/S/ MICHAEL E WHEAT