Justice James Jeremiah Shea delivered the Opinion of the Court.
***91 ¶1 Joseph Richard Polak II appeals from a judgment, following a jury trial in the Thirteenth Judicial District Court, Yellowstone County, for deliberate homicide with a weapons enhancement, tampering with or fabricating physical evidence, and criminal endangerment.
¶2 We restate the issues as follows:
Issue One: Whether the District Court abused its discretion by granting the *115 State's motion in limine excluding a glass methamphetamine pipe and the alleged drug use of a State witness that Polak sought to introduce for impeachment purposes.
Issue Two: Whether the District Court abused its discretion by instructing the jury on whether justifiable use of force as an affirmative defense is available to the first aggressor.
Issue Three: Whether there was sufficient evidence to support a conviction of evidence tampering.
¶3 We affirm in part, reverse in part, and remand for further proceedings consistent with this Opinion.
PROCEDURAL AND FACTUAL BACKGROUND
¶4 On April 28, 2015, Polak shot and killed Scott Hofferber with a .45 caliber handgun in a trailer park on Lake Elmo Drive in Billings. The only eyewitness to the incident was Andrea Sattler. Polak, Sattler, and Hofferber were all recently acquainted. Sattler occasionally worked in the trailer park cleaning vacant trailers. Hofferber lived in the park. Sattler and Hofferber were involved in an intimate relationship. Polak also pursued a romantic relationship with Sattler. Polak testified that Hofferber had "a reputation for being a fighter and that he was violent." On one occasion, Hofferber poured a bottle of bleach out in front of Polak and Sattler. Polak testified Hofferber informed Polak that he poured the bleach out in preparation of killing Polak. Sattler described it as a "scare tactic" and testified Hofferber told her later, "that's what you do before you kill somebody so that the blood doesn't ***92 soak into the fibers of the wood." Sattler testified that when she told Polak that Hofferber criticized her relationship with Polak, Polak responded that he would not fight Hofferber but would shoot him instead. On April 27, 2015, Sattler brokered a car sale between Polak and Sattler's father-in-law. That evening, Sattler told Polak she had money left over from the sale to return to him, and they agreed to meet at the trailer park. In the early morning hours, Polak's friend drove him to the trailer park to collect the money.
¶5 At trial, Polak testified that as he walked toward the trailer Sattler had been cleaning, he saw Sattler and believed she was high on methamphetamine. Polak testified he and Sattler had previously gotten high on methamphetamine together. Polak testified he then heard someone say, "Hey, motherfucker," and looked up to see Hofferber walking towards him. Polak testified Hofferber also appeared to be high on methamphetamine and angry. Polak testified that he asked Hofferber what his problem was, and Hofferber responded, "you're my problem," and "you're going to bleed, bitch." Polak testified that Hofferber brandished a rod with a spike on the end of it in his right hand (called a "catspaw"), causing Polak to step backward. Polak testified he told Hofferber, "don't," before pulling out his .45 caliber handgun. In response to the drawn weapon, Polak testified that Hofferber dared Polak to "go ahead" and kept coming toward Polak. Polak shot Hofferber, then he turned and ran. Polak got in his friend's car, telling him to leave, and the two drove off.
¶6 Sattler testified to a slightly different version of events. The night of the shooting, Sattler was with Hofferber inside the abandoned trailer that she was employed to clean. When Polak arrived, Sattler testified that he appeared angry and was asking about his money. Sattler testified that Polak saw Hofferber and asked, "What's your problem, bro?" Hofferber replied, "You're my problem, bro." Sattler stated that Hofferber took out a catspaw, held it out to Polak, and said, "Here. You are going to need this." She testified Hofferber did not step towards Polak, who was standing about six feet away. Sattler testified Polak backed up two steps, pulled out a handgun, and fired one shot into Hofferber's chest. Sattler testified Hofferber then grabbed his chest, fell backwards, and said, "I can't believe you did that, man." Sattler testified she then fled to a friend's trailer but returned briefly to grab her purse. Sattler's recollections regarding the details of the incident changed depending on whom she told. Some of these details included the distance between Polak and Hofferber when he fired the gun, the words exchanged by Polak and Hofferber, how Hofferber was *116 holding the catspaw, and whether Hofferber stepped toward Polak. ***93 Sattler also testified that she did not clearly recall a lot of the details.
¶7 After the incident, Officer Jay Stovall of the Billings Police Department responded to a 911 call that a man had been shot at the trailer park on Lake Elmo Drive. Stovall observed that Hofferber was already deceased when he arrived. Stovall recovered a single .45 caliber shell casing in the street near the trailer. When police officers arrested Polak, Polak attempted to flee by ramming his truck into a patrol car and reversing into a federal marshal's vehicle. He was ultimately apprehended. Police officers discovered a loaded 9mm handgun in the vehicle Polak was driving. Police never located the .45 caliber handgun used to kill Hofferber. Polak admitted to shooting Hofferber but claimed he was acting in self-defense. The State charged Polak with (1) deliberate homicide in violation of § 45-5-102(1)(a), MCA ; (2) a weapons enhancement, § 46-18-221, MCA ; (3) tampering with or fabricating physical evidence in violation of § 45-7-207(1)(a), MCA ; and (4) criminal endangerment in violation of § 45-5-207(1), MCA.[1]
¶8 Polak moved to dismiss the tampering charge for lack of probable cause. On September 2, 2015, the District Court denied Polak's motion, determining there was probable cause to charge Polak with tampering with evidence. The District Court opined that the proper means for Polak to challenge the sufficiency of the evidence was after it had been presented to the trier of fact. At trial, Polak took the stand in his defense. During direct and cross-examination, no one questioned Polak as to the location of the .45 caliber handgun used in the shooting.
¶9 During voir dire, prospective juror John Wittman admitted he knew Hofferber and that Hofferber was a "distant relative." Defense counsel did not inquire further into Wittman and Hofferber's relationship, did not move for automatic dismissal of Wittman for cause, and did not use any peremptory challenges on Wittman. Wittman sat on the jury.
¶10 Sattler initially hid from police in a friend's trailer and asked friends to lie about her whereabouts. Later, Sattler contacted law enforcement and was interviewed. Police also found a glass pipe with methamphetamine residue resting on top of Sattler's cleaning sponge inside the trailer where she and Hofferber had been. A text message conversation from Sattler's phone the night of the shooting showed a text from Sattler inviting a friend to "come smoke" with her. When ***94 questioned at trial, Sattler denied using methamphetamine the night of the incident. Toxicology reports showed that Hofferber had ingested methamphetamine the night of his death in an amount that exceeded the average overdose level. The State moved in limine to prevent Polak from offering testimony or other evidence to impeach Sattler with the presence of the methamphetamine pipe. Polak responded that the evidence and questions were relevant to his defense and argued the State's motion should be denied. Following an in-camera discussion, the District Court agreed with the State and disallowed the evidence and Polak's proposed line of questioning.
¶11 Polak proceeded under a self-defense "justifiable use of force" ("JUOF") theory. After both parties presented their case-in-chief, the State proposed a "first-aggressor" jury instruction in response to Polak's claim of JUOF. Polak objected that there was no evidence to support such an instruction. The District Court disagreed and gave the instruction, which was patterned off Montana's model criminal jury instructions ("MCJI") No. 3-104. During closing arguments, the State directed the jury multiple times to "focus on the use of force by aggressor" and to "[p]ay attention to the initial aggressor instruction." The jury returned a verdict of guilty on all counts: deliberate homicide with a weapons enhancement, tampering with or fabricating physical evidence, and criminal endangerment. On March 1, 2016, the District Court sentenced Polak to sixty years for deliberate homicide, ten years consecutive for weapon enhancement, ten years consecutive for criminal endangerment, and ten *117 years to run concurrent for tampering with evidence; in total, an eighty-year prison sentence. Polak appeals.
STANDARDS OF REVIEW
¶12 We review for abuse of discretion a district court's grant or denial of motions to admit or exclude evidence, including motions in limine. Hulse v. DOJ, Motor Vehicle Div. , 1998 MT 108, ¶ 15, 289 Mont. 1, 961 P.2d 75. A district court is bound by the Rules of Evidence and applicable statutes, State v. Daniels , 2011 MT 278, ¶ 11, 362 Mont. 426, 265 P.3d 623, and we review a district court's application of a statute or rule of evidence de novo, State v. Lotter , 2013 MT 336, ¶ 13, 372 Mont. 445, 313 P.3d 148.
¶13 We review for an abuse of discretion a district court's decisions regarding jury instructions. Ammondson v. Northwestern Corp. , 2009 MT 331, ¶ 30, 353 Mont. 28, 220 P.3d 1 ; State v. Cybulski , 2009 MT 70, ¶ 34, 349 Mont. 429, 204 P.3d 7. A district court abuses its discretion if it acts arbitrarily without conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice.
***95 State v. Strang , 2017 MT 217, ¶ 14, 388 Mont. 428, 401 P.3d 690.
¶14 We review de novo whether sufficient evidence supports a conviction. State v. Torres , 2013 MT 101, ¶ 16, 369 Mont. 516, 299 P.3d 804 ; State v. Swann , 2007 MT 126, ¶ 19, 337 Mont. 326, 160 P.3d 511.
DISCUSSION
¶15 Issue One: Whether the District Court abused its discretion by granting the State's motion in limine excluding a glass methamphetamine pipe and the alleged drug use of a State witness that Polak sought to introduce for impeachment purposes.
¶16 "Relevant evidence-the only type of evidence admissible at trial-is evidence which has a tendency to make the existence of any fact of consequence to the determination of the action more or less probable than it would be without the evidence." State v. Johnson , 2008 MT 227, ¶ 22, 344 Mont. 313, 187 P.3d 662 (citing M. R. Evid. 401, 402). A district court has broad discretion to determine the relevancy and admissibility of evidence. Lotter , ¶ 13 ; State v. Berosik , 2009 MT 260, ¶ 28, 352 Mont. 16, 214 P.3d 776 ; State v. Montgomery , 2005 MT 120, ¶ 7, 327 Mont. 138, 112 P.3d 1014 (this Court will not overturn evidentiary rulings absent a showing of abuse of discretion). A district court may exclude relevant evidence, by an order in limine or otherwise, if the probative value of the evidence "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." M. R. Evid. 403 ; Hulse , ¶ 15.
¶17 A district court's discretion in applying the Rules of Evidence and exercising control to exclude evidence is limited by the "constitutionally required threshold level of inquiry ... afforded [to] the [d]efendant." State v. Gommenginger , 242 Mont. 265, 274, 790 P.2d 455, 461 (1990). A defendant has a constitutional right to present a complete defense and to confront his accusers, including to "demonstrate the bias or motive of prosecution witnesses ...." Gommenginger , 242 Mont. at 272, 790 P.2d at 460 (citing U.S. Const. amend. VI ; M. R. Evid. 608(b) ); M. R. Evid. 611(b)(1) (matters affecting witness credibility are proper subjects of cross-examination).
¶18 The mere use of narcotics, or other intoxicants, is not admissible to impeach a witness's credibility. State v. Gleim , 17 Mont. 17, 30-31, 41 P. 998, 1001 (1895). However, evidence of a witness's intoxication "is admissible on cross-examination to impeach the witness's ability to accurately perceive the events about which [she] has testified."
***96 State v. Sorenson , 190 Mont. 155, 166, 619 P.2d 1185, 1191-92 (1980) (internal citations omitted). A defendant must lay a foundation that tends to show a witness was under the influence of intoxicants at the time of the events in question. State v. Matz , 2006 MT 348, ¶¶ 37-38, 335 Mont. 201, 150 P.3d 367. In other words, a defendant must, as with any other piece of evidence proffered, present a coherent theory of relevance. See M. R. Evid. 401, 402.
*118 ¶19 The State moved to exclude Polak from providing testimony, referencing, or questioning Sattler about the methamphetamine pipe found in the trailer the night of the shooting, or about her drug use generally. The District Court agreed with the State, reasoning, "[y]ou cannot merely assume that they were [under the influence] or that their behavior was adversely affected ...." Thus, the District Court concluded, Polak "failed to make a requisite showing under Gleim that the meth pipe" in the trailer was sufficient to show Sattler was intoxicated at the time of the shooting.
¶20 The State argues that Polak failed to establish a sufficient connection between the methamphetamine pipe and any alleged impairment of Sattler's memory of the events to establish the pipe's relevance. The State further argues that the only evidence in the record of Sattler's alleged intoxication was Polak's self-serving statement that he believed Sattler was under the influence of methamphetamine.
¶21 Polak counters that in disallowing the evidence and the proposed line of questioning, the District Court abused its discretion and erroneously deprived the jury of important impeachment evidence. Sattler's and Polak's testimonies conflicted in ways that were potentially decisive as to whether Polak justifiably used force against Hofferber. Polak argues the methamphetamine pipe found on Sattler's cleaning sponge in the trailer near where the shooting occurred was relevant to whether Sattler was high that night and admissible for two purposes: (1) challenging the accuracy of her perceptions and memories of the incident, rendering her an unreliable witness, and (2) contradicting her claim she was not high that night, rendering her a liar and an untrustworthy witness. We agree.
¶22 Sattler's testimony served as the crux of the State's case. Polak's proposed line of questioning was relevant to Sattler's accuracy of her perception the night of the shooting and relevant to whether the jury would believe Sattler's or Polak's version of events. See Sorenson , 190 Mont. at 166, 619 P.2d at 1191 ; Gleim , 17 Mont. at 31, 41 P. at 1001. First, there was ample evidence that tended to lay the foundation that Sattler was potentially under the influence of methamphetamine at the ***97 time of the shooting. See Matz , ¶ 38. Polak testified he had previously seen Sattler high on methamphetamine and thought she was high the night of the shooting; Sattler was in the presence of, and intimately involved with, someone (Hofferber) high on methamphetamine; phone records show Sattler invited a friend to "come smoke" shortly before the shooting; and a glass methamphetamine pipe was found on top of her sponge in the trailer that she was cleaning and staying in. Second, the pathologist testified that people high on methamphetamine suffer from hallucinations and impaired perceptions, diminishing the accuracy of memories. The jury was entitled to consider facts bearing on Sattler's ability to perceive and remember the shooting accurately. See Sorenson , 190 Mont. at 166, 619 P.2d at 1191-92.
¶23 The evidence was also relevant to impeaching Sattler's credibility and trustworthiness if she was able to be cross-examined as to whether she used methamphetamine the night of the shooting. On direct examination, the State adduced testimony from Sattler claiming she was not high on methamphetamine during the incident, and that her text message inviting a friend to "come smoke with me" minutes before the incident did not reference smoking methamphetamine. The State opened the door to Polak using the methamphetamine pipe for impeachment through contradiction. The evidence concerning the glass pipe was relevant, and the jury should have been able to hear and consider Polak's questions concerning it. See M. R. Evid. 611(b)(1), 402. The District Court abused its discretion when it excluded relevant evidence that potentially impugned the State's primary witness's perception of the events and impeached her credibility. We therefore reverse and remand on this issue.
¶24 Issue Two: Whether the District Court abused its discretion by instructing the jury on whether justifiable use of force as an affirmative defense is available to the first aggressor.
¶25 A district court has broad discretion in formulating jury instructions.
*119 State v. Spotted Eagle , 2010 MT 222, ¶ 6, 358 Mont. 22, 243 P.3d 402. However, a district court must instruct the jury on theories and issues that are "supported either by direct evidence or some logical inference from the evidence presented" at trial. State v. Erickson , 2014 MT 304, ¶ 35, 377 Mont. 84, 338 P.3d 598 ; State v. Kaarma , 2017 MT 24, ¶¶ 23, 25, 386 Mont. 243, 390 P.3d 609 ; State v. Johnson , 1998 MT 289, ¶ 35, 291 Mont. 501, 969 P.2d 925 ; State v. Grant , 221 Mont. 122, 131-32, 717 P.2d 562, 569 (1986) (juries must be instructed on "every issue or theory having support in the evidence"). "[W]hen conflicting evidence is presented, the district court must ***98 provide jury instructions on both theories supported by the evidence." Kaarma , ¶ 25 (citing State v. King , 2013 MT 139, ¶¶ 23-25, 370 Mont. 277, 304 P.3d 1. This Court reviews jury instructions as a whole to determine whether they fully and fairly instruct the jury on the applicable law. Kaarma , ¶ 7 ; State v. English , 2006 MT 177, ¶ 39, 333 Mont. 23, 140 P.3d 454. To constitute reversible error, any mistake in instructing the jury must prejudicially affect a defendant's substantial rights. Kaarma , ¶ 7 (citing Spotted Eagle , ¶ 6 ); Cybulski , ¶ 34.
¶26 Justifiable use of force ("JUOF"), or self-defense, provides a complete affirmative defense to deliberate homicide. Section 45-3-115, MCA ; Erickson , ¶ 25 ; State v. Miller , 1998 MT 177, ¶ 23, 290 Mont. 97, 966 P.2d 721. The State "retains the burden of proving the underlying offense beyond a reasonable doubt," but a defendant "who raises [JUOF] as an affirmative defense assumes the burden of producing sufficient evidence on the issues to raise a reasonable doubt of his guilt." Miller , ¶ 23 (internal citations omitted). To establish JUOF, a defendant must show that: "(1) he was not the aggressor; (2) he reasonably believed he was in imminent danger of unlawful harm; and (3) he used reasonable force necessary to defend himself." Miller , ¶ 23 (citing §§ 45-3-102, 105, MCA ).
¶27 If a rational trier of fact could find from the evidence that a defendant purposely or knowingly provoked force, a district court may give a "first-aggressor" instruction. Erickson , ¶¶ 33-35 (citing § 45-3-105(2)(a), MCA, and affirming a trial court's decision to give the "first-aggressor" instruction because there was testimony indicating the defendant was the aggressor and the instruction was therefore necessary to fully and fairly instructed the jury on applicable law and permit the jury to resolve questions of fact).
¶28 "The weight of the evidence and the credibility of the witnesses are exclusively within the province of the trier of fact ...." State v. Bower , 254 Mont. 1, 8, 833 P.2d 1106, 1111 (1992). Thus, it is the jury's "prerogative to accept or reject a defendant's claim of self-defense." Miller , ¶ 25 (citing State v. Crazy Boy , 232 Mont. 398, 401, 757 P.2d 341, 343 (1988) ); State v. Crabb , 232 Mont. 170, 173-74, 756 P.2d 1120, 1123 (1988).
¶29 The State proposed Jury Instruction No. 35, which recited § 45-3-105(2)(a), MCA, and mirrored MCJI No. 3-104 (2009).[2] Polak objected ***99 to the instruction. The District Court gave the instruction, reasoning that there was conflicting testimony about who was the aggressor and that "[§] 45-3-102(a), [MCA,] is a correct statement of the law" and it was "appropriate ... [to] let the jury have the instruction on what the law is." The District Court also gave the related JUOF instructions.
¶30 The State argues the conflicting evidence in the record warranted the jury instructions for both "first aggressor" and JUOF. Polak argues that the District Court abused its discretion by giving a "first-aggressor" instruction despite insufficient evidence Polak purposely or knowingly provoked *120 violence. Polak reasons that he did not employ threatening conduct or fighting words by which he could reasonably be said to have knowingly provoked or provided reasonable excuse for Hofferber's threat. We disagree.
¶31 The "first-aggressor" instruction was supported by the evidence adduced at trial. See Kaarma , ¶¶ 23, 25. There was sufficient evidence, both direct and circumstantial, to give the "first-aggressor" jury instruction. See Erickson , ¶ 35 ; Kaarma , ¶¶ 23, 25. This evidence included the conflicting testimony about what was said between Polak and Hofferber immediately before the shooting and whether Polak was upset when he arrived at the scene the night of the shooting; Polak's and Hofferber's previous interactions; Polak having brought a loaded gun with him; Polak telling the man who drove him to the scene to leave the vehicle running and then fleeing the scene; and the fact that Polak resisted arrest.
¶32 The "first-aggressor" instruction was a correct statement of law and it, along with the JUOF and other instructions, fully instructed the jury on the applicable law. See Kaarma , ¶ 7. The jury instructions, as a whole, fairly and fully apprised the jury of the applicable law presented at trial. See English , ¶ 39. It was for the jury to accept either Polak's version or the State's version of events. See Miller , ¶ 25. The District Court did not abuse its discretion in giving a "first-aggressor" jury instruction.
¶33 Issue Three: Whether there was sufficient evidence to support a conviction of evidence tampering.
¶34 We review questions on the sufficiency of the evidence in a ***100 criminal case to determine whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Rosling , 2008 MT 62, ¶ 35, 342 Mont. 1, 180 P.3d 1102 ; State v. Roedel , 2007 MT 291, ¶ 35, 339 Mont. 489, 171 P.3d 694.
¶35 A new trial cannot be granted where the evidence adduced at the first trial proves insufficient to support a conviction. State v. Warren , 192 Mont. 436, 442, 628 P.2d 292, 296 (1981) (citing State v. Johnson , 177 Mont. 182, 188, 580 P.2d 1387, 1390 (1978) ). Once a reviewing court has found the evidence legally insufficient, the proper remedy is a judgment of acquittal. Warren , 192 Mont. at 442, 628 P.2d at 296 (citing Burks v. United States , 437 U.S. 1, 17-18, 98 S.Ct. 2141, 2150-51, 57 L.Ed.2d 1 (1978) (holding the Double Jeopardy Clause of the U.S. Const. amend. V forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence that it failed to muster in the first proceedings).
¶36 A person commits the offense of tampering with or fabricating physical evidence "if, believing that an official proceeding or investigation is pending or about to be instituted, the person ... alters, destroys, conceals, or removes any record, document, or thing with purpose to impair its verity or ability in the proceeding or investigation ...." Section 45-7-207(1)(a), MCA ; Rosling , ¶¶ 39, 41 (affirming a conviction for tampering with evidence where a witness saw the defendant arrive near the victim's house, the witness did not see other cars coming and going, the defendant's shoeprints were found in the victim's yard, the victim's blood was on the defendant's clothing, and the defendant laundered his clothes later that day); Warren , 192 Mont. at 437-38, 443, 628 P.2d at 293-94, 296 (holding that where the State failed to produce sufficient evidence of corroboration as required by § 46-16-213, MCA, the State's case failed as a matter of law, and the defendant was entitled to judgment of acquittal on the charge of tampering with evidence). The State must prove beyond a reasonable doubt that: (1) the defendant had knowledge of or believed an official proceeding or investigation was pending or imminent; (2) the defendant took action to conceal physical evidence pertinent to the proceeding or investigation; and (3) the defendant had the intent to purposely impair the availability of physical evidence. See State v. Nelson , 2014 MT 135, ¶¶ 17-18, 375 Mont. 164, 334 P.3d 345. A person acts "with purpose" if it is his conscious objective to engage in that conduct or cause that result. State v. Staat , 251 Mont. 1, 9, 822 P.2d 643, 644 (1991) (affirming *121 a defendant's conviction for tampering with ***101 or fabricating physical evidence); § 45-2-101(65), MCA.
¶37 Polak challenged the sufficiency of evidence in a pretrial motion and on appeal.[3] During trial, Polak took the stand in his defense. Neither defense counsel nor the State inquired as to how or whether Polak disposed of the .45 caliber handgun used in the shooting or even asked the location of the firearm. The mere failure to locate evidence, without more, is insufficient for a conviction of evidence tampering. Other states have similarly reversed convictions for tampering with evidence where the convictions were predicated on a failure to locate evidence. See e.g., State v. Guerra , 2012 NMSC 027, ¶ 16, 284 P.3d 1076 (N.M. 2012) (the State cannot merely ask "the jury to infer that an overt, intentional act of hiding the weapon [has] taken place solely based on the fact that the police never found the weapon. ..."); State v. Duran , 2006 NMSC 035, ¶ 15, 140 N.M. 94, 140 P.3d 515 (2006) ; State v. Spears , 178 Ohio App. 3d 580, 586, 899 N.E.2d 188, 191 (2008).
¶38 The State presented no evidence that Polak disposed of the handgun. Instead, during closing argument, the State speculated that Polak disposed of the firearm because (1) Polak had the firearm when he used it against Hofferber, and (2) Polak did not have the firearm when he was arrested two days later. Bare suspicion from which inferences can be drawn is insufficient for a finding of beyond a reasonable doubt. See State v. Fitzpatrick , 163 Mont. 220, 225, 516 P.2d 605, 609 (1973) ("[t]he test is whether the facts and circumstances are of such a quality and quantity as to legally justify a jury in determining guilt beyond a reasonable doubt. ..."). Finally, the State failed to produce evidence that Polak committed an overt act or had the requisite mental state intending to impair or hinder the prosecution. See Staat , 251 Mont. at 9, 822 P.2d at 644.
¶39 There was insufficient evidence for a reasonable jury to find the elements of evidence tampering, § 45-7-207(1)(a), MCA, beyond a reasonable doubt. See Roedel , ¶ 35. We reverse this portion of the District Court's judgment and remand with directions to enter a judgment of acquittal on the charge of tampering with or fabricating physical evidence.
¶40 Finally, Polak raises a claim of ineffective assistance of counsel ***102 ("IAC"). Polak argues his trial counsel was ineffective for not inquiring into Juror Wittman's familial connection to Hofferber. Section 46-16-115(2)(a), MCA. However, due to our holding to reverse and remand for further proceedings consistent with this opinion, we decline to address the merits of Polak's IAC claim.
CONCLUSION
¶41 The District Court abused its discretion by granting the State's motion in limine to exclude evidence of Sattler's relationship to the methamphetamine pipe and her alleged drug use. The District Court did not abuse its discretion in giving the jury the "first-aggressor" instruction. There was insufficient evidence to support Polak's conviction for tampering with evidence. The District Court's Order is affirmed in part and reversed in part. We remand for further proceedings consistent with this Opinion.
We Concur:
MIKE McGRATH, C.J.
INGRID GUSTAFSON, J.
BETH BAKER, J.
DIRK M. SANDEFUR, J.

Initially, Polak was also charged with Criminal Possession of Dangerous Drugs. On June 9, 2016, the charge was dismissed on a motion of the State.

The Use of Force by Aggressor Instruction:
The use of force in defense of a person is not available to a person who purposely or knowingly provoke[d] the use of force against himself unless such force is so great that he reasonably believes that he is in imminent danger of death or serious bodily harm and that he has exhausted every reasonable means to escape such danger other than the use of force which is likely to cause death or serious bodily harm to the assailant.
MCJI 3-104 (2009); § 45-3-105(2)(a), MCA (2013).

Citing to § 46-16-403, MCA, and State v. Tichenor , 2002 MT 311, ¶ 22, 313 Mont. 95, 60 P.3d 454, the District Court held: "The proper means for a defendant to challenge the sufficiency of the State's evidence against him is a motion to dismiss after the State has presented evidence to the trier of fact."